# IN THE CIRCUIT COURT FOR
## PRINCE GEORGE'S COUNTY, MARYLAND

**NATHANIEL F. DAVIS, II**
4880 Cranston Court
Waldorf, MD 20602

       **Plaintiff,**

   **vs.**

**JAY CHANG KIM,**
in both his official capacity as the President
of J and H Beverage, Inc d/b/a Largo
Liquors and his individual capacity
836 Largo Center Drive
Upper Marlboro, MD 20774 and/or
16607 Harbour Town Drive
Ashton, MD 20861

and

**HAN M. KIM,**
in both his/her official capacity as the Vice
President of J and H Beverage, Inc. d/b/a/
Largo Liquors and his/her individual
capacity
836 Largo Center Drive
Upper Marlboro, MD 20774 and/or
16607 Harbour Town Drive
Ashton, MD 20861

and

**J AND H BEVERAGE, INC. d/b/a
LARGO LIQUORS**
836 Largo Center Drive
Upper Marlboro, MD 20774

and

Civil Action No. CAL19-19278

**COMPLAINT FOR UNLAWFUL
CITIZEN'S ARREST AND OTHER
CLAIMS**

**Jury Trial Demanded**

FILED
JUN 2 4 2019 #689
CLERK OF THE CIRCUIT COURT
FOR PRINCE GEORGE'S COUNTY, MD

3e

**WALLACE KENT ROOS, JR.**
in both his official capacity as an
Employee of J and H Beverage, Inc. d/b/a
Largo Liquors and his individual capacity
836 Largo Center Drive
Upper Marlboro, MD 20774

and

**SEUNG BONG HAN**
in both his official capacity as an
Employee of J and H Beverage, Inc. d/b/a
Largo Liquors and his individual capacity
836 Largo Center Drive
Upper Marlboro, MD 20774

and

**VENANCIO GOMEZ GARCIA**
in both his official capacity as an
Employee of J and H Beverage, Inc. d/b/a
Largo Liquors and his individual capacity
836 Largo Center Drive
Upper Marlboro, MD 20774

and

**ADAM C. KIM**
in both his official capacity as an
Employee of J and H Beverage, Inc. d/b/a
Largo Liquors and his individual capacity
836 Largo Center Drive
Upper Marlboro, MD 20774

and

**UNIDENTIFIED EMPLOYEES OF J
AND H BEVERAGE, INC. d/b/a
LARGO LIQUORS,**
in both their official capacities as
Employees of J and H Beverage, Inc. d/b/a
Largo Liquors and their individual
capacities
836 Largo Center Drive
Upper Marlboro, MD 20774

2

and

**PRINCE GEORGE'S COUNTY
POLICE LIETENANT PF JAMON
Badge No. 3943,**
in his official capacity as a Prince George's
County Police Officer, in his official
capacity as an Employee of J and H
Beverage, Inc. d/b/a Largo Liquors, and in
his individual capacity
7600 Barlowe Road
Landover, MD 20785

and

**PRINCE GEORGE'S COUNTY
POLICE DEPARTMENT**
7600 Barlowe Road
Landover, MD 20785

and

**HENRY P. STAWINSKI, III,**
in his official capacity as Chief of Police of
the Prince George's County Police
Department
7600 Barlowe Road
Landover, MD 20785

and

**UNKNOWN POLICE OFFIERS NOS.
1, 2 and 3,**
in both their official capacities as officers
of the Prince George's County Police
Department and their individual capacities
7600 Barlowe Road
Landover, MD 20785

   **Defendants.** [1]

---

[1] The terms "employee" and/or "employed" used in reference to the Defendants herein named includes all persons with any authority to sell and/or distribute liquor on behalf of J and H Beverage, Inc. and/or with access to the Liquor Store's property, including, but not limited to store funds and store chattel. The use of these terms is not intended to exclude contractors or temporary

Plaintiff, Nathaniel F. Davis, II ("Plaintiff"or "Nathaniel"), for his complaint against the defendants named in the caption above, avers on knowledge, information and belief:

## STATEMENT OF THE CASE

1.      This is a civil rights action challenging the alleged "citizen's arrest," of Plaintiff, Nathaniel F. Davis, which was executed by Defendant and Owner of J and H Beverage, Inc. d/b/a Largo Liquors (the "Liquor Store"), Jay Kim ("Defendant Kim") and his employees ("Employees" or collectively, the "Private Citizens") on Monday, August 7, 2017 (the "Incident" and/or the "Citizen's Arrest"). During the alleged "Citizen's Arrest" of Nathaniel, the Plaintiff was falsely imprisoned by Defendant Kim and his Employees. During that false imprisonment, excessive force was used against his person by the Private Citizens—either intentionally or negligently—resulting in the assault, battery, and intentional and/or negligent infliction of emotional distress of Plaintiff, among other claims and injuries. Additionally, in making the alleged "Citizen's Arrest," Defendant Kim intentionally deceived and defrauded Plaintiff in misrepresenting himself as a Special Police Officer; however, at the time, he did not hold a commission granted by the Governor which authorized him to exercise the powers of a police officer on the property where the Liquor Store operates and conducts its business. *See* **Exhibit 1**, Defendant Kim's Authorization to Operate as a Security Guard Officer, not issued until August 20, 2017.

2.      This civil rights action also challenges as unconstitutional the Prince George's County Police Department's (the "PGPD," the "Police " or the "Police Department") warrantless arrest and detention of Nathaniel which was premised upon the alleged "Citizen's Arrest" performed by the Private Citizens and which the Police Department followed through on in spite

workers operating on behalf of the Liquor Store at the time of the Incident described in this Complaint.

of their knowledge, information and belief that Defendant Kim had no authority to execute the alleged "Citizen's Arrest," particularly not where the force used was excessive in light of the Private Citizens' accusation that Nathaniel "knocked over a box of Slim Jims."[2]

3.    On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer with the Transportation Security Administration ("TSA"). While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. In response, the store clerk (the "Store Clerk" (name unknown)) threateningly and provocatively (name unknown) told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch."[3] *See id.* [4] Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for standard issue PGPD handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

4.    While Maryland law does permit a citizen's arrest to be executed, it does not do so without limitation. *See Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 656 (1970). Unless an

---

[2] At the time of detaining and charging Nathaniel, the Police had witnessed the event in its entirety by reviewing the security footage which is attached hereto as **Exhibit 2**.

[3] On information and belief, the Store Clerk is believed to be one of the employees of the Liquor Store named in the caption above.

[4] Largo Liquor Store has a reputation in the community for mistreating and disrespecting its patrons, but there is a limited amount of liquor stores from which to make purchases in the immediate vicinity. *See id.* Therefore, community citizens feel pressured to utilize the Store's services as it has no other competitors; thereby denying the community any opportunity to exercise its right of the free market. *See* **Exhibit 3**.

individual has committed a misdemeanor, which is disorderly and dangerous and amounts to a disruption of the public peace, a private party cannot make a lawful arrest and, should he do so, the arrestor is liable for false imprisonment. *See id.*

5.    Despite the Store Clerk's attempt to provoke Nathaniel to a physical fight, Nathaniel did not attempt to assault the Store Clerk, did not steal anything and was no danger to the Store Clerk, nor any other individual inside the Liquor Store that day; rather, he was punished in complete contravention of the law by the Private Citizens, at least one (1) of whom attempted to incite Nathaniel to a violent assault. *See* **Exhibit 2**. Although they took the law into their own hands, they labeled their assault of his person a "Citizen's Arrest" — a statement then backed up to Nathaniel by PGPD Police Officers.

6.    According to the Maryland Declaration of Rights, a victim (like Nathaniel) of a crime shall be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process. Art. 47(a). Instead of honoring these rights, the Police Department mocked them by replacing the handcuffs used by the Private Citizens to restrain Nathaniel with handcuffs of their own and locking him the back of a Police cruiser, further detaining him and charging him with disorderly conduct. In spite of the shocking video which is attached hereto as **Exhibit 2** and which depicts the Incident in its entirety, the Police did nothing that day to hold Defendant Kim, nor the Employees of the Liquor Store accountable for their brutal, inexplicable, and unwarranted display of over-masculine mob mentality in arresting young Nathaniel. *See also* FN. 4, *supra*.

7.    The Maryland Declaration of Rights, Art. 24 states:

*[N]o man ought to be taken or imprisoned or disseized of his freehold, liberties or*

*privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his*

*life, liberty or property, but by the judgment of his peers, or by the Law of the land.[5]*

In a civilized society, the judgment of one's peers refers to peer judgment, or the decision-making process that takes place in a group of one's peers, not mindless mob mentality which results in the violent restraint of one's person as if he has no rights.

## PARTIES

8.     Plaintiff Nathaniel Davis, II is a twenty-four (24) year-old resident of Charles County, Maryland and the State of Maryland.  He is a person within the meaning of the Constitution of the State of Maryland.  As explained below, Nathaniel has been injured and risks further harm as a result of Defendants' illegal acts and omissions.

9.     Defendant Jay Chang Kim is of the age of majority and is the Owner and President of Largo Liquor Store, located in Prince George's County, Maryland and the State of Maryland.  As the owner of the Liquor Store, he oversees and is responsible for the daily operations of the business.  He is a person within the meaning of Maryland Code, Alcoholic Beverages Article, Section 1-101(v)(1)-(2).  He is being sued in his official capacity as the Owner/President of the Liquor Store and in his individual capacity.

10.     Defendant Han M. Kim (gender unknown) is of the age of majority and is the Owner and Vice President of Largo Liquor Store, located in Prince George's County, Maryland

---

[5] Only in perverting this statement can one suggest that Defendant Kim's and the Employee's actions constitute a judgment by Nathaniel' peers.  False imprisonment cannot lawfully stand as a means by which to show another private citizen just who is "boss."  Any decision to the contrary would allow for any private citizen to be jumped by another group of private citizens simply because the group was in agreement that any small act of personal identity was an offense to the delicate sensibilities of the group.

and the State of Maryland. As the owner of the Liquor Store, he/she oversees and is responsible for the operation of the business. He/she is a person within the meaning of Maryland Code, Alcoholic Beverages Article, Section 1-101(v)(1)-(2). He/she is being sued in his/her official capacity as the Owner/Vice President of the Liquor Store and in his/her individual capacity.

11.     Defendant J and H Beverage, Inc. d/b/a Largo Liquors is a corporation in good standing. It is a "person" within the meaning of Maryland Code, Alcoholic Beverages Article, Section 1-101(v)(2).

12.     Defendant Wallace Kent Roos, Jr. is an individual and Employee of J and H Beverages, Inc. d/b/a Largo Liquors. He is a person within the meaning of the Maryland Code, Alcoholic Beverages Article, Section 1-101(v)(1). He is being sued in his official capacity as an Employee of the Liquor Store and in his individual capacity.

13.     Defendant Seung Bong Han is an individual and Employee of J and H Beverages, Inc. d/b/a Largo Liquors. He is a person within the meaning of the Maryland Code, Alcoholic Beverages Article, Section 1-101(v)(1). He is being sued in his official capacity as an Employee of the Liquor Store and in his individual capacity.

14.     Defendant Venancio Gomez Garcia is an individual and Employee of J and H Beverages, Inc. d/b/a Largo Liquors. He is a person within the meaning of the Maryland Code, Alcoholic Beverages Article, Section 1-101(v)(1). He is being sued in his official capacity as an Employee of the Liquor Store and in his individual capacity.

15.     Defendant Adam C. Kim is an individual and Employee of J and H Beverages, Inc. d/b/a Largo Liquors. He is a person within the meaning of the Maryland Code, Alcoholic Beverages Article, Section 1-101(v)(1). He is being sued in his official capacity as an Employee of the Liquor Store and in his individual capacity.

16.     Defendant Unknown Employees of J and H Beverage, Inc. d/b/a Largo Liquors are individual Employees of J and H Beverage, Inc. d/b/a Largo Liquors. Each Employee is a person within the meaning of the Maryland Code, Alcoholic Beverages Article, Section 1-101(v)(1). They are being sued in their official capacity as Employees of the Liquor Store and in their individual capacities.

17.     Defendant Prince George's County Police Defendant Lieutenant PF Jamon, Badge, No. 3943 ("Defendant Lieutenant Jamon") is a police officer employed by the Prince George's County Police Department.    On information and belief, Defendant Lieutenant Jamon also moonlights as a security guard for the Liquor Store in his individual capacity as a citizen of the State of Maryland.  Defendant Lieutenant Jamon is a person within the meaning of the Maryland Code, General Provisions Article, Section 1-114, and at all relevant times was acting under the color of State Law. He is sued in his official capacity as a Prince George's County police officer, in his official capacity as a security guard employed by the Liquor Store, and in his individual capacity.

18.     Defendant Prince George's County Police Department is a government agency. The County Counsel holds hearings on Police Department policy and sets the Police Department budget. It is a person as that term is defined in Maryland Rule 1-202(t).

19.     Defendant Henry P. Stawinski, III is the Chief of Police for the Prince George's County Police Department. He is the chief law enforcement officer of the Prince George's County Police Department, appointed by the County Executive, with the advice and consent of the County Council. As Chief of Police, Mr. Stawinski exercises final policy-making authority for the Police Department, establishing duties, conduct and discipline of officers and other employees, and establishing policies regarding screening, hiring, training, monitoring and supervision of

9

subordinates. He is a person as that term is defined in Maryland Rule 1-202(t) and acted in all relevant times under color of State Law. Chief of Police Stawinski is being sued in his official capacity.

20.     Defendant Unidentified Police Officers Nos. 1, 2 and 3 are police officers employed by the Price George's County Police Department. They are persons within the meaning of Maryland Code, General Provisions Article, Section 1-114, and at all times were acting under color of the State Law. They are sued in their official capacities as police officers and their individual capacities.

21.     At all times as to the Incident described herein, Han M. Kim served in the capacity of Vice President and co-owner of J and H Beverage, Inc. d/b/a Largo Liquors.

22.     At all times as to the Incident described herein, Jay Chang Kim, operated in both is official capacity as the President of J and H Beverage, Inc. d/b/a Largo Liquors and Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and/or unidentified/unknown persons were Employees of the Liquor Store.

23.     At all times as to the Incident described herein, Henry P. Stawinski, III served in the capacity of Chief of Police of the Prince George's County Police Department.

## JURISDICTION AND VENUE

24.     This Court has subject-matter jurisdiction over this case because Nathaniel seeks more than $30,000 in this tort/civil rights action. *See* Maryland Code, Courts and Judicial Proceedings Article, Sections 1-501 and 4-401.

25.     This Court has personal jurisdiction over the Defendants, Jay Chang Kim and Han M. Kim, in both their official capacities as the Owner/President and Owner/Vice President, respectively, of J and H Beverage, Inc. d/b/a Largo Liquor Store and in their individual capacities

pursuant to Maryland Code, Courts and Judicial Proceedings Article, Section 6-102. This Court further maintains personal jurisdiction over these Defendants because their respective tortious acts and omissions occurred in the State of Maryland where Nathaniel was injured; and because, at the time of those acts and omissions, each of them was employed by and or an employer within Maryland; as such, they were performing a character of work or service within Maryland. *See id.*

26.     This Court has personal jurisdiction over the Defendant J and H Beverage, Inc. d/b/a/ Largo Liquors pursuant to Maryland Code, Courts and Judicial Proceedings Article, Section 6-102.

27.     This Court has personal jurisdiction over the Defendants Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and any and all Unknown Employees of J and H Beverage, Inc. d/b/a Largo Liquors pursuant to Maryland Code, Courts and Judicial Proceedings Article, Section 6-102; because their tortious acts and omissions occurred in the State of Maryland where Nathaniel was injured; and because, at the time of those acts and omissions, they were employed and/or contracting within Maryland and were thus performing a character of work or service within Maryland.

28.     This Court has personal jurisdiction over the Defendant Prince George's County Police Defendant Lieutenant Jamon, Badge No. 3942, in his official capacity as a Prince George's County Police Officer, in his capacity as an employee of J and H Beverage, Inc d/b/a Largo Liquors, and in his individual capacity pursuant to Maryland Code, Courts and Judicial Proceedings Article, Section 6-102; because his tortious acts and omissions occurred in the State of Maryland where Nathaniel was injured; and because, at the time of those acts and omissions, he was employed within Maryland and was thus performing a character of work or service within Maryland.

11

29. This Court has personal jurisdiction over the Defendants Unidentified Police Officers Nos. 1, 2 and 3, as well as Henry P. Stawinski, III, in their official capacities as officers of the Prince George's County Police Department and Chief of the Prince George's County Police Department, respectively, as well as their individual capacities pursuant to Maryland Code, Courts and Judicial Proceedings Article, Section 6-102. This Court further maintains personal jurisdiction over the Defendants because their tortious acts and omissions occurred in the State of Maryland where Nathaniel was injured.

30. Venue is proper in this Court because the causes of action arose in Prince George's County, Maryland.

## PRE-SUIT REQUIREMENTS

31. Nathaniel has satisfied the prerequisites to suit specified by the Local Government Tort Claims Act, Maryland Code, Courts and Judicial Proceedings Article, Section 5-394 for each claim in this complaint to which these laws apply.

32. Nathaniel sent notice of his claims to the County Attorney, James M. McCarthy ("Attorney McCarthy"), Esquire via First Class and Certified Mail on July 19, 2018 (the "Notice"). *See* **Exhibit 4**. The Prince George's County Executive, Rushern L. Baker, III; the Prince George's County Inspector General, Carlos F. Acosta;, and the Deputy Chief of Liquor Inspection for Prince George's County were all provided with a copy of the Notice via first class and electronic mail on July 19, 2018. *See id.*

33. Attorney McCarthy did not respond to the Notice.

## FACTUAL ALLEGATIONS

**A.    Defendant Kim and the Liquor Store Employees unlawfully seized Nathaniel without the authority and/or licensure to do so and far short of appropriate facts and/or circumstances by which to justify a private seizure of his person.**

34.    Nathaniel Davis, II is the twenty-four (24) year old son of Nathaniel Davis, Sr. ("Davis Sr.") who served twenty-six (26) years with the Metropolitan Police Department and Cynthia Davis, a federal government employee (the "Parents"). With Davis Sr. for a father, Nathaniel grew up with structure and guidance, as well as a strong sense of respect for people. His parents placed particular emphasis on respecting, providing for, and protecting both his elders and the women in his life and community.

35.    In line with their strong belief in structure and discipline, Nathaniel's Parents enrolled him at McDonough School ("McDonough") for his high school studies—a private coeducational school with its roots in semi-military training and a legacy of scholarship and success. As a student at McDonough, he was a member of the track team and the swim team, serving as captain during his junior and senior year. He went on to attend college at Southern Maryland where he earned a degree in General Studies. Nathaniel is currently pursuing a degree in nursing, a dream born out of his passion for helping people who truly need him.

36.    On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered Largo Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was then-employed as a Transportation Security Officer.[6]  While he was present in the Liquor Store, he overheard an encounter between the Store Clerk (or the "Clerk") and a woman, during which the

---

[6] The physical and emotional toll this Incident placed on Nathaniel forced him to take a temporary leave of absence from Transportation Security Administration ("TSA") and for him to, subsequently, be terminated from his employment there.

Clerk was disrespectful to and dismissive of the woman, namely Pelicha Wilkerson ("Ms. Wilkerson" or the "Elder"). *See* **Exhibit 2**. The Elder was vocal about her frustration which was clearly heard by the other patrons in the Liquor Store, including Nathaniel. *See id.*

37.     The Clerk persisted in disrespecting the Elder, dismissing her pleas for service and inviting Nathaniel to make his purchase instead of assisting the Elder in completing a purchase already in progress.[7] *See id.* Nathaniel raised some objection to the Clerk as to the way in which he was treating the Elder as he simultaneously offered his identification for the Clerk to review and some currency to pay for his item. *See id.*

38.     The Clerk did not receive Nathaniel' concerns well. *See id.* Rather, he refused to service Nathaniel, removing the item he had intended to purchase from the counter and aggressively taunting him to "throw the first punch." *See id.*

39.     Frustrated, powerless and disabused of his liberty as a *voluntary* patron of the Liquor Store, Mr. Davis knocked over a box of Slim Jims on the counter. *See id.*

40.     In response, the Clerk rushed out from behind the counter while another Employee came from the back of the Liquor Store. *See id.* One put Nathaniel's body in a type of hold, locking his arms around his person. *See id.* The other landed a punch to Nathaniel' midsection with his right hand and used his left hand to secure Nathaniel for the punch by grabbing his right shoulder. *See id.* The two (2) men violently forced Nathaniel to the opposite side of the store, slamming him into a freezer. *See id.* A third man came from outside of the Liquor Store and

---

[7] Nathaniel was the second customer who the clerk serviced prior to servicing the Elder over her respectful objections and demonstrated patience, albeit that she was confused as to the lack of service being extended to her. *See id.*

jumped on top of him while the other two (2) men backed up to allow for a solid landing.[8] *See id.* Then, all three (3) men wrangled an unarmed Nathaniel to the ground who desperately flung around – not so much to resist the force – as to escape the brutal and excessive attack which, in the vernacular, would easily be described as his having been "jumped." *See id.* One (1) of the three (3) Employees insisted that Nathaniel "put [his] hands behind his back" and "stop resisting," thereby acting as a police officer and/or authorized agent, yet none of the three (3) employees was then licensed to act as a security guard or special police officer. *See id. See also* **Exhibit 1**.

41.     The "jumping" did not end there. *See* **Exhibit 2**. One of the men grabbed Nathaniel' legs while one of the other men chocked him, both restricting his airways and preventing him from being able to breathe, resulting in a lightheaded Nathaniel who then feared that his life was ending and/or in danger.

42.     There were several witnesses in the Liquor Store, one of whom was the Elder who first voiced complaints about the service extended to customers. *See id.* Nathaniel, now being well-acquainted with her voice, heard the Elder call out "stop choking him; ya'll going to kill him." *See id.* The statement flipped a switch in Nathaniel who went from fearing that he was about to die to accepting his imminent death. The Elder's comment seemed to wake the Liquor Store Employees up. *See id.* Although they were not immediately responsive to the Elder's plea for mercy, they began to calm down. *See id.* Instead of continuing the brutal assault, they handcuffed Nathaniel. *See id.*

43.     When they finally subdued Nathaniel by placing handcuffs on him, the man who came from outside (presumably, Defendant Kim) asked the other two (2) men what Nathaniel did

---

[8] The individual who came from outside is believed to be the Owner and President of the Liquor Store, Defendant Kim.

to trigger the alleged "Citizen's Arrest". *See id.* One of the other men casually replied, "Ahh, he knocked over all that stuff," casually gesturing toward the counter where the Slims Jims lay rustled. *See id.* One of the men then proceeded to tauntingly push a handcuffed Nathaniel as Nathaniel requested that someone call his mother. *See id.*

44.     The third Liquor Store Employee made a surprisingly casual telephone call—not to the police, but to another person who he greeted by saying, "[h]ey, where you?" *See id.* That call was made to an off-duty lieutenant who worked part-time at the Liquor Store, namely Defendant Lieutenant Jamon.[9]

45.     While Nathaniel remained handcuffed, at least twenty-six (26) patrons came in and out of the Liquor Store, enabling them to observe Nathaniel's embarrassing and humiliating condition. *See id.*

46.     The Elder located Nathaniel' cell phone and called his mother.[10] *See id.* In speaking with his mother, Nathaniel – then believing himself to be under arrest – explained to her that he had been "locked up." *See id.*

47.     After concluding the call, one of the Liquor Store Employees taunted Nathaniel by explaining that they ("they" as in the Private Citizens) would charge him with multiple violations of the law. The Employee stated this information as if he were a police officer himself, but at that point no individual involved in the alleged "Citizen's Arrest" had identified themselves as an officer or offered any credentials to confirm any authority to detain or arrest Nathaniel' person.

---

[9] Some of the patrons who were present that day placed calls to 9-1-1, whom later reported to this scene in response.

[10] Nathaniel's phone shattered as a result of the attack.

48.     With Nathaniel handcuffed and the Store traffic slowing down, one (1) of the Liquor Store Employees turned their attention to the Elder, demanding that she leave the Liquor Store, guarding against her reentry, and simultaneously guarding against Nathaniel's ability to depart. *See id.*

**B.     The Prince George's County Police Department was incorrect, misguided, corrupt and malicious in its decision to charge Nathaniel, but not charge the Liquor Store Employees and/or Defendant Kim upon the insistence of then off-duty lieutenant, Liquor Store security guard, and personal friend of the Liquor Store Employees, Defendant Lieutenant Jamon.**

49.     A Police Officer from the Prince George's County Police Department ("PGPD") arrived on the scene in response to multiple 9-1-1 calls placed by patrons of the Liquor Store.[11] *See id.* Police Officer No. 1 noticed that Nathaniel was in handcuffs and inquired as to why his freedom had been restricted. *See id.* Defendant Kim did not provide a legitimate response to that inquiry, but instead walked out of the Liquor Store while Police Officer No. 1 moved Nathaniel out of the public eye to further discuss the Incident. *See id.*

50.     The Police Officers recognized cameras in the store and asked to review the security footage which they did so review.

51.     After reviewing the video, an Officer replaced the Liquor Store's handcuffs with proper PGPD standard issue handcuffs. While doing so, the Officer explained that based on the security footage, Nathaniel would not be charged but, in order to deescalate the situation, he was being removed from the premises.

---

[11]Other PGPD Police Officers were present outside of the Liquor Store but do not present on the security footage which cuts off shortly after the arrival of Police Officer No. 1.

Upon information and belief, no employee of the Liquor Store ever placed a call to the legitimate authorities and/or dialed 9-1-1 to report an emergency.

52.     Nathaniel was then further detained by the PGPD Officers who removed the handcuffs, re-handcuffed him, and placed him in the backseat of a standard issue cruiser.

53.     Then off-duty lieutenant, Defendant Lieutenant Jamon, arrived. He was informed by the PGPD Officers who initially reported to the scene that Nathaniel was not being charged. In response, Defendant Lieutenant Jamon insisted that Nathaniel be charged with something and Nathaniel was issued a citation for disorderly conduct. *See* **Exhibit 5**.

54.     Although he requested the names of the persons who assaulted him, Nathaniel was refused any information and was driven a distance from the Liquor Store to be released.

**C.     Nathaniel suffered physical, emotional, and other injuries as a result of the Defendants' unlawful behavior.**

55.     As to physical injuries, Nathaniel suffered a hip injury, a head injury, multiple abrasions and flank pain. *See* **Exhibit 5**. Nathaniel also suffered emotional pain in response to the Incident, as well as humiliation, embracement, degradation, stress, anxiety, and despair. His attempts to deal with the emotional damage were valiant, but ultimately the intensity of the Incident rendered him unable to deal with ongoing racism and discrimination in the work place that he had previously managed so well. As a result, he took a leave of absence which lead to further disenfranchisement at work and his eventual termination.

56.     Nathaniel was unable to secure any justice in working with the PGPD who did not take and/or file a police report regarding the Incident and dismissed the assault charges he filed against the Liquor Store Employees in response to the citation issued to him for disorderly conduct.

**D.** **The Liquor Board hearing following the alleged "Citizen's Arrest", and the consequences imposed on the Liquor Store as a result of that hearing, further evidences that the seizure of Nathaniel's person was not a lawful citizen's arrest.**

57.     On February 21, 2018, a citizens' petition was filed against the Liquor Store (the "Petition"), requesting that its license not be renewed and explaining that Largo Liquors had "a deleterious effect on the community." *See* **Exhibit 6**. The Petition, supported by ten (10) hand signatures and at least six-thousand, two hundred and nineteen (6,219) electronic signatures, offered at least six (6) reasons to support the Petition, including, but not be limited to:

a.      The alleged "Citizen's Arrest" at issue in this Complaint. The Incident is described in the Petition and identifies the Defendant Employees and Defendant Kim as the aggressors of the Incident. The Petition further identities the force used in seizing Nathaniel as "an unnecessary use of force;"

b.      The Owner, Defendant Kim, repeatedly instigates disturbances on the premises;

c.      The Owner, Defendant Kim approached a citizen in the parking lot of the shopping center where the Liquor Store is located, aggressively confronted him, chased him down in the parking lot, and assaulted him. The petitioners further state that such is the frequent behavior and/or demeanor of Defendant Kim as to his customers;

d.      The owner, Defendant Kim, is unfit to hold a liquor license because he is consistently discourteous to customers and/or treats them with malice;

e.      The Liquor Store Employees are unnecessarily aggressive with customers, inciting them to violence and treating them dismissively and without value; and

f.      The manner of operations of the Liquor Store disturbs the peace, safety and tranquility of the neighborhood and is generating antisocial and unsafe activities through its business operations.

19

58.     On April 11, 2018, a Protest Public Hearing was held as to the Petition filed against Largo Liquors. At least forty-seven (47) private citizens showed up at the hearing to testify against Largo Liquors. *See* **Exhibit 7**.

59.     On April 19, 2019, Terrence Sheppard, then-director of the Board of License Commissioners for Prince George's County Government, issued a decision, stating that the Liquor Store's license would only be renewed if it met the following conditions:

a.     Work with PGPD to implement a security plan;

b.     Utilize a sworn officer beginning at 3:00 p.m.;

c.     Obtain certifications in customer service and/or conflict resolution for all of the Liquor Store's employees and/or staff; and

d.     Prepare documented procedures and principles related to customer service and conflict resolution.

*See* **Exhibit 8**.

## CLAIMS

60.     The alleged "Citizen's Arrest" of Nathaniel Davis was unlawful, as such, it violated his unalienable right to be free from deprivation of his liberty, false imprisonment and/or false arrest.

61.     The Defendants who performed the alleged "Citizen's Arrest" of Nathaniel Davis used overbearing, excessive and brutal force in complete contravention of Maryland State law which only permits a citizen's arrest to the extent the individual being arrested committed a misdemeanor which was disorderly and dangerous, amounting to a disruption of the public peace. *See Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 656 (1970). Otherwise, the arresting person

and/or parties cannot make a lawful arrest and, should he/they do so, is/are liable for false imprisonment. *See id.*

62.     It necessarily follows that the party and/or parties alleging to have made a lawful citizen's arrest cannot taunt and incite an individual to engage in the very behavior which he/they allege created a rational basis upon which to justify making a citizen's arrest, particularly where the language used to do so includes the words, "I'll give you a chance to throw the first punch." *See id. See also* **Exhibit 2**.

63.     Moreover, committing a battery during the course of a *legally justified* arrest is only permissible as to a reasonable use of force, not where excessive force comes into play. *French v. Hines*, 182 Md. App. 201, 265–66 (2008). To the extent Defendant Kim and/or the Liquor Store Employees used excessive force in effectuating the alleged "Citizen's Arrest," the privilege to commit such a battery is lost. *See id.* In this case, the force used to effectuate the alleged "Citizen's Arrest" was greater than was reasonably necessary under the circumstances and the arresting party is therefore liable. *See id.*

64.     Finally, the alleged "Citizen's Arrest" of Nathaniel Davis demonstrates a conspiracy between the Liquor Store and law enforcement and/or persons who serve as law enforcement to punish him in order to exculpate the Liquor Store and its Agents of liability and wrongdoing, as well as law enforcement, whether in their official or individual capacities, for liability as to their wrong doing, amounting to a violation of Nathaniel' civil rights.

65.     Confronted with evidence as to the nature of the Incident, first responders agreed that Nathaniel should not be charged. However, upon the insistence of Defendant Lieutenant Jamon—an off-duty PGPD lieutenant and friend of Defendant Kim's who also moonlights as a

security guard for the Liquor Store—the PGPD Officers changed their mind, determining to issue a citation to Nathaniel for disturbing the peace.

66.     Despite clear indications that excessive force was used by Defendant Kim and his Employees, neither Defendant Kim, nor his employees received a citation as to their conduct. Such a conspiracy amounts to a Violation of Nathaniel' civil rights.

In consideration of the facts, laws and theories of law enumerated herein, Nathaniel' alleges the following claims:

## COUNT I
**Maryland Constitution, Declaration of Rights, Art. 24 Claim for the unlawful deprivation of Nathaniel's right to liberty and to be free of unlawful seizures of his freehold, liberties or privileges.**

*(All Defendants)*

67.     Nathaniel incorporates the allegations made in Paragraphs 1-66 of this Complaint as if fully stated herein.

68.     Nathaniel asserts this claim against each Defendant, including Unidentified Officer Nos. 1, 2, and 3 in both their official and personal capacities.

69.     On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. *See id.* In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's Employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel

by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

70.     No man ought to be taken or imprisoned or disseized of his freehold, liberties, or privileges. *See* Md. Decl. of Rights, Art. 24.

71.     No man out to be deprived of his life, liberty or property, but by the (lawful) judgment of his peers, or by the Law of the land. *See id.*

72.     No probable cause existed to arrest and/or seize Nathaniel.

73.     The alleged "Citizen's Arrest", detainment, and/or seizure of Nathaniel' person by Defendant Kim and his Employees whereby private citizens took the law into their own hands (refusing to call the police in order to report an emergency) and the executive force they used to effect that arrest, as well as the subsequent actions taken by PGPD Officers and Defendant Lieutenant Jamon to further detain Nathaniel, unlawfully deprived Nathaniel of his right to liberty and to be free from the unlawful seizure of his person.

74.     At all times, Han M. Kim served in the capacity of Vice President and co-owner of J and H Beverage, Inc. d/b/a Largo Liquors.

75.     At all times, Jay Chang Kim, operated in both is official capacity as the President of J and H Beverage, Inc. d/b/a Largo Liquors and Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and/or unidentified/unknown persons were Employees of the Liquor Store.

76.     At all times, Henry P. Stawinski, III served in the capacity of Chief of Police of the Prince George's County Police Department.

77.     The deprivation of Nathaniel' rights was committed with malice as it was motivated by an evil motive, the intent to injure, ill will and/or fraud.

78.     As a result of Defendant Kim's and his Employees', the PGPD Officers' and/or Defendant Lieutenant Jamon's tortuous acts, Nathaniel suffered damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

## COUNT II
**Section 1983 Claim for violation of Nathaniel's Maryland State and United State's Constitutional right to liberty and to be free of unlawful seizures of his freehold, liberties or privileges by every person who is under the color of law, guaranteed by the Maryland Constitution, as well as the Fourth and Fourteenth Amendments**

*(All Defendants)*

79.     Nathaniel incorporates the allegations made in Paragraphs 1-78 of this Complaint as if fully stated herein. as if fully stated herein.

80.     Nathaniel asserts this claim against each Defendant, including Unidentified Officer Nos. 1, 2, and 3 in both their official and personal capacities.

81.     On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. *See* **Exhibit 2**. In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

82.     Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of the State of Maryland, subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress. *See* 18 U.S. Code § 242.

83.     The Alleged "Citizen's Arrest", detainment, and/or seizure of Nathaniel' person by Defendants Kim and his Employees, whereby private citizens took the law into their own hands (refusing to call the police to report an emergency), as well as the subsequent actions taken by PGPD Police Officers to further detain Nathaniel, unlawfully deprived Nathaniel of his right to liberty and to be free from the unlawful seizure of his person.

84.     The deprivation of Nathaniel' rights was committed with malice as it was motivated by an evil motive, the intent to injure, ill will and/or fraud.

85.     As a result of Defendant Kim's and his Employees', the PGPD Officers' and/or Defendant Lieutenant Jamon's tortuous acts, Nathaniel suffered damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

### COUNT III
### False Imprisonment

#### (*All Defendants*)

86.     Nathaniel incorporates the allegations made in Paragraphs 1-85 of this Complaint as if fully stated herein.

87.     Nathaniel asserts this claim against each defendant, including Unidentified Officer Nos. 1, 2, and 3 in both their official and personal capacities.

88.     On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. *See* **Exhibit 2**. In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

89.     The alleged "Citizen's Arrest", detainment, and/or seizure of Nathaniel' person by Defendants Kim and his Employees whereby private citizens took the law into their own hands, subjected Nathaniel to false imprisonment.

90.     Defendant Kim and his Employees, through their statements and acts, intimidated Nathaniel into remaining in the Liquor Store under the control of one (1) of the Liquor Store's Employees and/or the Owner, Defendant Kim, and into being deprived of his liberties by handcuffing him.

91.     Defendant Kim and his Employees demonstrated control over Nathaniel' person and repeated demands that he stop resisting as they wrestled Nathaniel to the ground, chocked, and handcuffed him. *See id.* The Employee who demonstrated the most lasting control over Nathaniel then continued to taunt and harass with him threats that he (not officers) would charge him with a crime and/or crimes. *See id.*

92. Being handcuffed, Nathaniel was compelled and forced to remain with Defendant Kim, where he did not want to be. A reasonable person would not have felt free to leave the Liquor Store or to refuse to obey the controlling Employee.

93. Defendant Kim and his Employees threat of criminal charges lacked any legal justification and/or authorization and was therefore an impermissible restraint of Nathaniel's liberty.

94. The deprivation of Nathaniel' rights was committed with malice as it was motivated by an evil motive, the intent to injure, ill will and/or fraud.

95. As a result of Defendant Kim and his Employees' tortuous acts, Nathaniel suffered damages, including physical injuries to his person, emotional trauma, humiliation, distress and damage to his personal property.

96. Unidentified Defendant Officer Nos. 1, 2, and 3 then further subjected Nathaniel to false imprisonment by replacing the handcuffs with standard issue PGPD handcuffs and placing him the backseat of a police cruiser.

97. With his handcuffs replaced by PGPD Officers, Nathaniel was compelled and forced to remain with the Officers, where he did not want to be. A reasonable person would not have felt free to leave the area and/or the police cruiser in which he was placed or to refuse to obey the officers.

98. The PGPD officers acknowledged that, given their view of the security footage, Nathaniel was not to be charged with a crime; however, he was not immediately released, but further detained while the Officers, at the insistence of off-duty lieutenant Defendant Lieutenant Jamon, conspired to issue him a citation as to disorderly conduct. The ongoing detention of his

27

person therefore lacked any legal justification and was therefore an impressible restraint of Nathaniel's liberty.

99.    As a result, of the PGPD officers and/or Defendant Lieutenant Jamon's tortuous acts, Nathaniel suffered damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

## COUNT IV
### Civil Conspiracy

*(Defendants Jay Chang Kim, Defendant Lieutenant Jamon, and Unidentified Police Officers 1, 2 and 3)*

100.    Nathaniel incorporates the allegations made in Paragraphs 1-99 of this Complaint as if fully stated herein.

101.    Nathaniel asserts this claim against Jay Chang Kim, Defendant Lieutenant Jamon, and Unknown Officer Nos. 1, 2, and 3, in both their official and personal capacities.

102.    On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer.  While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk.  *See id.*  In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch."  *See id.*  Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims.  *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him.  *See id.*  The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

103.     In issuing Nathaniel a citation for disorderly conduct, Defendant Kim, Defendant Lieutenant Jamon, and Unidentified Police Officers 1, 2 and 3 conspired to build a defense for the assault.  Upon arriving on the scene, Defendant Lieutenant Jamon learned that Unidentified Police Officers 1, 2, and 3 viewed the security footage and, on the basis of that footage, determined that no charges against Nathaniel should be issued.  In response, Defendant Lieutenant Jamon insisted that Nathaniel be charged with "something."

104.     Defendant Lieutenant Jamon's position aligned with Defendant Kim's recorded statements that Nathaniel would be charged with a crime and/or crimes, as was his desire and plan when he called off-duty Defendant Lieutenant Jamon rather than placing a call to 9-1-1 to report an emergency.

105.     Defendant Kim, Defendant Lieutenant Jamon and Unidentified Police Officers 1, 2, and 3 agreed to accomplish the unlawful act of charging Nathaniel when no lawful reason existed to do so.

106.     The agreement of Defendant Kim, Defendant Lieutenant Jamon and Unidentified Police Officers 1, 2, and 3 was committed with malice as it was motivated by an evil motive, the intent to injury, ill will and/or fraud.

107.     As a result of Defendants Jay Chang Kim, Defendant Lieutenant Jamon and Unidentified Police Officers 1, 2 and 3 tortious actions, Nathaniel suffered damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

## COUNT VI
### Misrepresentation, Fraud, and Deceit (w/ Malice)

*(Defendants Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and Unidentified Employees of J and H Beverage, Inc. d/b/a/ Largo Liquors, and Defendant Lieutenant Jamon)*

108.    Nathaniel incorporates the allegations made in Paragraphs 1-107 of this Complaint as if fully stated herein.

109.    Nathaniel asserts this claim against Defendants Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Wallace Kent Roos, Jr. ("Defendant Roos"), Seung Bong Han ("Defendant Han"), Vanancio Gomez Garcia ("Defendant Garcia"), Adam C. Kim ("Defendant A. Kim") and Unidentified Employees of J and H Beverage, Inc. d/b/a/ Largo Liquors, and Defendant Lieutenant Jamon, in both their official and personal capacities.

110.    On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. *See id.* In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

30

111.    Defendants Kim, Roos, Han, Garcia, and A. Kim and/or Unidentified Employees of the Liquor Store misrepresented themselves as having the authority of law enforcement and/or being a law enforcement officer, requiring Nathaniel to submit to their control.

112.    The misrepresentation was executed with reckless indifferences to its truth as Defendants Kim, Roos, Han, Garcia and A. Kim and/or Unidentified Employees of the Liquor Store were fully aware of the falsity of the representation.

113.    Defendants Kim, Roos, Han, Garcia and A. Kim and/or Unidentified Employees of the Liquor Store knew, and acted with the intent and expectation that Nathaniel rely upon the representation.

114.    Defendant Lieutenant Jamon attempted to justify the actions of Defendants Kim, Roos, Han, Garcia and A. Kim and/or Unidentified Employees of the Liquor Store and, in doing so, continued to misrepresent that Defendants Kim, Roos, Han, Garcia, and A. Kim and/or Unidentified Employees of the Liquor Store possessed the authority of law enforcement and that Nathaniel was required to submit to their control.

115.    The misrepresentation, was executed by Defendant Lieutenant Jamon with reckless indifference to its truth as he was fully aware of the falsity of the representation, including that the force used in apprehending, detaining and/or arresting Nathaniel was excessive.

116.    Defendant Lieutenant Jamon knew, and acted with the intent and expectation that Nathaniel rely upon the representation.

117.    As a result of Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Stores, and Defendant Lieutenant Jamon's tortious actions, Nathaniel suffered damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

**COUNT VII**
**Malicious Prosecution**

*(Defendants Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors,*
*Defendant Lieutenant Jamon, Unidentified Officers 1, 2, and 3, and Prince George's County*
*Police Department)*

118.     Nathaniel incorporates the allegations made in Paragraphs 1-117 of this Complaint

as if fully stated herein.

119.     Nathaniel asserts this claim against Defendants Jay Chang Kim, Han M. Kim, J and

H Beverage, Inc. d/b/a Largo Liquors, Defendant Lieutenant Jamon and Unidentified Officers 1,

2, and 3, in both their official and personal capacities, as well as the Prince George's County Police

Department.[12]

120.     On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store

to purchase a spirit after a long day's work at Reagan National Airport where he was employed as

a Transportation Security Officer.  While there, Nathaniel raised concerns about the treatment of

an elderly customer by the Store Clerk.  *See* **Exhibit 2**.  In response, the Store Clerk threateningly

and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the

first punch."  *See id.*  Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims.

*See id.*  In response, three (3) of the Store's employees tackled him to the ground, banged him into

a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed

him.  *See id.*  The Police responded to the scene, swapped out the handcuffs placed on Nathaniel

---

[12] The Shopkeeper privilege does not apply as a defense to malicious prosecution where the shopkeeper did not have reason to believe that the person who was subjected to the alleged "Citizen's Arrest" committed theft of property from the merchant's premises. Md. Code Ann., Cts. & Jud. Proc. § 5-402 (West).

by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

121.   Defendant Lieutenant Jamon and Unidentified Officers 1, 2 and 3 were well aware that, having seen the security footage, Nathaniel should not be charged with a crime. In fact, prior to Defendant Lieutenant Jamon's arrival on the scene one of the Unidentified Officers informed Nathaniel that, having viewed the security footage, he would not be charged. However, Defendant Lieutenant Jamon insisted that Nathaniel be charged with "something." At which point an officer issued Nathaniel a citation for disorderly conduct.

122.   Defendants had no lawful basis upon which to issue said citation, and certainly, having witnessed the security footage, no lawful basis to issue a citation to Nathaniel without also issuing a citation to Defendant Kim and/or his Employees.

123.   Rather, Defendant Lieutenant Jamon and Officers 1, 2 and 3 issued a citation to Nathaniel with the intent of establishing a defense for Defendant Kim and/or his Employees. As such, they did so with malice, an improper and/or wrongful motive, including ill will, the intent to injure, and/or the intent to commit fraud.

124.   Defendant Lieutenant Jamon was not on duty at the time he reported to the Liquor Store to enforce the alleged "Citizen's Arrest" and was therefore operating outside of the scope of his authority to arrest a private citizen and/or to order the arrest and/or citation of Nathaniel. *See* MARYLAND TORT LAW HANDBOOK, False Imprisonment, § 4.5.

125.   Neither the police officers nor the Liquor Store employees had probable cause upon which to effectuate the arrest and/or citing of Nathaniel. *Chapman v. Nash*, 121 Md. 608 (1913). When there is no probable cause, malice may be inferred. *Hooke v. Equitable Credit Corp.*, 42 Md. App. 610 (1979).

126.     A police officer is responsible for malicious prosecution if the officer acts with malice. *See* MARYLAND TORT LAW HANDBOOK, False Imprisonment, § 4.7.

127.     Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store misrepresented themselves as having the authority of law enforcement and/or being a law enforcement officer, requiring Nathaniel to submit to their control.

128.     The State resolved the prosecution of Nathaniel in his favor as the charge was dismissed in a court of law.

129.     The citation was a method of intimidation, harassment and conspiracy.

130.     As a result of the tortious and malicious actions of Defendants Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Defendant Lieutenant Jamon and Unidentified Officers 1, 2, and 3, as well as the Prince George's County Police Nathaniel suffered damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

## COUNT VIII
### False Imprisonment (Unlawful Citizen's Arrest)[13]

*(Defendants Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and Unidentified Employees of J and H Beverage, Inc. d/b/a/ Largo Liquors)*

131.     Nathaniel incorporates the allegations made in Paragraphs 1-130 of this Complaint as if fully stated herein.

---

[13] Although a property owner and/or merchant is legally justified in detaining a person for theft or for the recapture of property, provided the property believed to be stolen or missing is found in the possession of the person detained, Nathaniel did not engage in and was never accused of theft in connection with the facts set forth in this Complaint or at any other time as a patron of the Liquor Store. Md. Code Ann., Cts. & Jud. Proc. § 5-402 (West).

132.     Nathaniel asserts this claim against all Defendants, including Unidentified Officers 1, 2 and 3, in both their official and personal capacities. [14]

133.     On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. *See* **Exhibit 2**. In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

134.     In response to Nathaniel knocking over a box of Slim Jims, Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store collectively attacked, restrained and detained Nathaniel. *See id.*

135.     As a part of that attack, three (3) of the four (4) persons working in the Liquor Store that day punched, kicked and wrestled Nathaniel to ground while chocking him to the point of breathlessness. *See id.* They slammed him into large class coolers and threw him to the other side of the room where they then handcuffed him. *See id.*

---

[14] *See* FN 11, *supra.*

136. Although a private person may make an arrest for a misdemeanor and/or felony committed in their presence or view which amounts to a breach of the peace, instigating and/or intimidating another private citizen is an assault and any action by a private citizen who responds to behavior incited by his own action is not defensible as a citizen's arrest. *See Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643 (1970).

137. A private citizen is liable for a false arrest if it turns out that the arrestee was innocent and/or the arrester is unable to show that an appropriate crime had, in fact, been committed. *See Stevenson v. State*, 287 Md. 504, 413 (1980).

138. The attack and subsequent restraint and detainment of Nathaniel's person was an intentional restriction without legal justification of Nathaniel's freedom of movement. Nathaniel was aware of the restriction and did not consent.

139. In being further detained with handcuffs and held in the back of a PGPD cruiser by Unidentified Officers 1, 2, and 3, Nathaniel was further assaulted rather than treated as the victim of a violent attack. As such, he was intentionally restrained without legal justification of his freedom from moment. Nathaniel was aware of the restriction and did not consent.

140. In extending the PGPD's detention of his person such that Defendant Lieutenant Jamon could insist that he be charged with disorderly conduct, even though it was the original intention of Unidentified Officers 1, 2 and 3 to release him without charging him, Nathaniel was again intentionally restrained without legal justification of his freedom from moment. Nathaniel was aware of the restriction and did not consent. *See* **Exhibit 1**.

141. Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Stores were aware that they were without a license to act as a security guard and/or special

police officer and therefore they acted with malice as it was motivated by an evil motive, the intent to injure, ill will and/or fraud.[15]

142. Defendant Lieutenant Jamon and Unidentified Officers 1, 2 and 3 allowed the unlawful restraint and detention to continue so that they could conspire to unlawfully charge him with a crime. Their actions were motivated by an evil motive, the intent to injure, ill will and/or fraud.

143. Defendant Lieutenant Jamon was not on duty at the time he reported to the Liquor Store to enforce the alleged "Citizen's Arrest" and was therefore operating outside of the scope of his authority to arrest a private citizen and/or to order the arrest and/or citation of Nathaniel. *See* MARYLAND TORT LAW HANDBOOK, False Imprisonment, § 4.5.

144. Neither the police officers nor the Liquor Store employees had probable cause upon which to effectuate the arrest and/or citing of Nathaniel. *Chapman v. Nash*, 121 Md. 608 (1913).

145. When there is no probable cause, malice may be inferred. *Hooke v. Equitable Credit Corp.*, 42 Md. App. 610 (1979).

146. A police officer is responsible for false imprisonment if the officer acts with malice. *See* MPJI-Cv 15:11.

---

[15] Initially the person believed to have been Defendant Kim was outside of the store when the Incident began to unfold and did not witness the events, but upon seeing the commotion inside of the store, he came back inside and jumped in the brawl. *See* **Exhibit 2**. Afterwards, he asked the other two (2) staff members, "what happened." As a result, Defendant Kim (or the person described as having been outside), acted with reckless indifference to Nathaniel. Moreover, having received a response to his question as to what happened, Defendant Kim learned that the violent reaction was in response to Nathaniel "knocking over some things over there." Rather than deescalate the situation, he further detained Nathaniel with the intent to have him penalized, but not by the PGPD. Rather he called his friend, off-duty Lieutenant Jamon and did not call 9-1-1 to report an emergency, thereby demonstrating a reckless disregard for the law as well as committing fraud in the ongoing and unlawful detention of Nathaniel which he knew he did not possess the authority to maintain.

147. As a result of Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store, Unidentified Officers 1, 2, and 3, and Defendant Lieutenant Jamon's tortious actions, Nathaniel suffered damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

**COUNT IX**
**False Arrest (Unlawful Citizen's Arrest)**

*(All Defendants)*

148. Nathaniel incorporates the allegations made in Paragraphs 1-147 of this Complaint as if fully stated herein.

149. Nathaniel asserts this claim against all Defendants, including Unidentified Officers 1, 2 and 3, in both their official and personal capacities.

150. On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. *See* **Exhibit 2**. In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

151. Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees the Liquor Store acted with the intent to restrain and/or detain Nathaniel by attacking his person,

subduing him, ordering him to place his hands behind his back, ordering him to stop resisting, and placing handcuffs on his wrists. *See id.*

152. Defendants Kim, Roos, Han, Garcia, Kim and/or Unidentified Employees of the Liquor Store acted with the intent to take Nathaniel into custody and subject him to their actual control and will. *See id.*

153. The alleged "Citizen's Arrest" was made without legal justification and without consent.

154. Although a private person may make an arrest for a misdemeanor and/or felony committed in their presence or view which amounts to a breach of the peace, instigating and/or and intimidating another private citizen is an assault and any action by a private citizen who responds to behavior incited by his own action is not defensible as a citizen's arrest.[16] *See Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643 (1970). A private citizen is liable for a false arrest if it turns out that the arrestee was innocent and/or the arrester is unable to show that an appropriate crime had, in fact been committed. *See Stevenson v. State*, 287 Md. 504, 413 (1980). In being further detained, with handcuffs and held in the back of a PGPD cruiser by Unidentified Officers 1, 2, and 3, Nathaniel was further assaulted rather than treated as the victim of a violent attack. As such, he was intentionally restrained and/or detained and taken into custody, subjecting him to the actual control and will of the PGPD Officers. The arrest and/or detention was effectuated without legal justification and without consent.

---

[16] "Any number of misdemeanors are committed daily by citizens, but the overwhelming majority of them do not constitute a breach of the peace." *See* MD. ANN. CODE Art. 27, § 320 (1982). *See also* TRANSP. ART. § 7-707, MD. ANN. CODE art. 27, § 468 (1982), MD. ANN. CODE art. 89, § 65 (1979). On the other hand, assault and battery—as committed by the Store Clerk, and then two (2) other Liquor Store Employees, does constitute a misdemeanor which is subject to a citizen's arrest. In that case, Nathaniel that had a right to arrest the appropriate Defendants, not vice versa. *See* MD. TRANSP. CODE ANN. § 26-202 (1977).

155. A private citizen is liable for a false arrest if it turns out that the arrestee was innocent and/or the arrestor is unable to show that an appropriate crime had, in fact been committed. *See Stevenson v. State*, 287 Md. 504 (1980).

156. In being further detained with handcuffs and held in the back of a PGPD cruiser by Unidentified Officers 1, 2 and 3, Nathaniel was further assaulted rather than treated as the victim of a violent attack. As such he was intentionally restrained and/or detained and taken into custody, subjecting him to the actual control and will of the PGPD Officers.

157. The arrest and/or detention was effectuated without legal justification and without consent.

158. In extending the PGPD's detention of his person such that Defendant Lieutenant Jamon could insist that he be charged with disorderly conduct, even though it was the intention of Unidentified Officers 1, 2 and 3 to release him without charging him, Nathaniel was again intentionally restrained and/or detained and taken into custody specifically by Defendant Lieutenant Jamon, then off-duty, subjecting Nathaniel to the actual control and will of Defendant Lieutenant Jamon. The arrest was made without legal justification and without consent.

159. Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store were aware that they were without a license to act as a security guard and/or special police officer and therefore they acted with malice as doing so was motivated by an evil motive, the intent to injure, ill will and/or fraud. *See* **Exhibit 1**.

160. Defendant Lieutenant Jamon and Unidentified Officers 1, 2 and 3 allowed the unlawful restraint and detention to continue so that they could conspire to unlawfully charge him with a crime. Their actions were motivated by malice, an evil motive, the intent to injure, ill will and/or fraud.

161. Defendant Lieutenant Jamon was not on duty at the time he reported to the Liquor Store to enforce the alleged "Citizen's Arrest" and was therefore operating outside of the scope of his authority to arrest a private citizen and/or to order the arrest and/or citation of Nathaniel. *See* MARYLAND TORT LAW HANDBOOK, False Imprisonment, § 4.5.

162. Neither the police officers nor the Liquor Store employees had probable cause upon which to effectuate the arrest and/or citing of Nathaniel. *Chapman v. Nash*, 121 Md. 608 (1913). When there is no probable cause, malice may be inferred. *Hooke v. Equitable Credit Corp.*, 42 Md. App. 610 (1979).

163. A police officer is responsible for a false arrest if the officer acts with malice. *See* MPJI-Cv 15:11.

164. As a result of Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees' the Liquor Store, Unidentified Officers 1, 2, and 3's, and Defendant Lieutenant Jamon's tortious actions, Nathaniel suffered damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

## COUNT X
### Battery

*(All Defendants)*

165. Nathaniel incorporates the allegations made in Paragraphs 1-164 of this Complaint as if fully stated herein.

166. Nathaniel asserts this claim against all Defendants, including Unidentified Officers 1, 2 and 3, in both their official and personal capacities.

167. On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of

41

an elderly customer by the Store Clerk. *See id.* In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

168. The attack was intentional and executed with Nathaniel' consent. *See id.*

169. The attack was both harmful and offensive, causing physical pain, injury and illness, as well as offending Nathaniel' reasonable sense of personal dignity. *See id.*

170. In being further detained, with handcuffs and held in the back of a PGPD cruiser by Unidentified Officers 1, 2, and 3, Nathaniel was further assaulted rather than treated as the victim of a violent attack. Being further detained and re-handcuffed by PGPD Officers was both harmful and offensive, causing physical pain, injury and illness, as well as offending Nathaniel's reasonable sense of personal dignity.

171. The PGPD Officers' act was intentional and executed without Nathaniel' consent.

172. In extending the PGPD's detention of his person such that Defendant Lieutenant Jamon could insist that he be charged with disorderly conduct, even though it was the intention of Unidentified Officers 1, 2 and 3 to release him without charging him, Nathaniel suffered even further assault where he was then handcuffed and detained as a punishment for being violently attacked. The ongoing restraint and detention of his person was both harmful and offensive,

causing physical pain, injury and illness, as well as offending Nathaniel's reasonable sense of personal dignity.

173. Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store committed the battery with malice as it was motivated by an evil motive, the intent to injure, ill will and/or fraud.

174. Defendant Lieutenant Jamon and Unidentified Officers 1, 2 and 3 allowed the unlawful detention and battery to continue so that they could conspire to unlawfully charge him with a crime. Their actions were motivated by malice, an evil motive, the intent to injure, ill will and/or fraud.

175. As a result of Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store, Unidentified Officers 1, 2, and 3, and Defendant Lieutenant Jamon's tortious actions, Nathaniel suffered damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

## COUNT XI
### Assault

*(All Defendants)*

176. Nathaniel incorporates the allegations made in Paragraphs 1-175 of this Complaint as if fully stated herein.

177. Nathaniel asserts this claim against all Defendants, including Unidentified Officers 1, 2 and 3, in both their official and personal capacities.

178. On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. *See id.* In response, the Store Clerk threateningly and

provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

179. Both the threats to harm his person, including the tauntingly requesting that Nathaniel "throw the first punch" and the attack itself amount to an assault. *See id.*

180. Nathaniel did not consent to the threats or the attack. *See id.*

181. Nathaniel, in being threatened, believed that the Store Clerk had the ability to carry out his threats and his response in knocking over the box of Slim Jims was a undeniable demonstration that he felt threatened enough by the store clerk so as to put him in a defensive posture in case the Store Clerk were to carry out his threat. *See id.* Thus he believed the Store Clerk capable of carrying out the threat and was in reasonable fear of imminent arm. *See id.*

182. Nathaniel's fear was proven legitimate when he was violently attacked by three (3) out of the four (4) persons working in the Liquor Store that day, including the Store Clerk. *See id.*

183. In being further detaining, with handcuffs and held in the back of a PGPD cruiser by Unidentified Officers 1, 2, and 3, Nathaniel was further assaulted rather than treated as a victim.

184. In extending the PGPD's detention of his person such that Defendant Lieutenant Jamon could insist that he be charged with disorderly conduct, even though it was the intention of Unidentified Officers 1, 2 and 3 to release him without charging him, Nathaniel suffered a further assault.

44

185.     Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store committed the assault with malice as it was motivated by malice, an evil motive, the intent to injure, ill will and/or fraud.

186.     Defendant Lieutenant Jamon and Unidentified Officers 1, 2 and 3 allowed the unlawful detention to continue so that they could conspire to unlawfully charge him with a crime. Their actions were motivated by an evil motive, the intent to injure, ill will and/or fraud.

187.     As a result of Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store, Unidentified Officers 1, 2, and 3, and Defendant Lieutenant Jamon's tortious actions, Nathaniel suffered damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

### COUNT XII
### Intentional Infliction of Emotional Distress

*(Defendants Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and Unidentified Employees of J and H Beverage, Inc. d/b/a/ Largo Liquors and Defendant Lieutenant Jamon)*

188.     Nathaniel incorporates the allegations made in Paragraphs 1-187 of this Complaint as if fully stated herein.

189.     Nathaniel asserts this claim against Defendants Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Roos, Han, Garcia, A. Kim and Unidentified Employees of the Liquor Store and Defendant Lieutenant Jamon, in both their official and personal capacities.

190.     On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. *See id.* In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first

punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

191.    Subsequent to the attack, the person believed to be Defendant Kim ridiculed, taunted, harassed and demeaned a then fully subdued and handcuffed Nathaniel. *See id.*

192.    In taunting, harassing and threatening Nathaniel, as well as in initiating the attack, the Store Clerk acted with a desire to inflict severe emotional distress on Nathaniel; the Store Clerk knew that such distress was substantially certain to result from his actions and acted recklessly and in deliberate disregard of a high probability that emotional distress would follow. *See id.*

193.    In participating in the attack, the other two (2) Liquor Store Employees who participated in the attack, acted with a desire to inflict severe emotional distress on Nathaniel; they knew that such distress was substantially certain to result from their actions and acted recklessly and in deliberate disregard of a high probably that emotional distress would follow.

194.    By insisting that the PGPD officers at the scene charge Nathaniel with a crime, Defendant Lieutenant Jamon acted with a desire to inflict severe emotional distress on Nathaniel; the Store Clerk knew that such distress was substantially certain to result from his actions and acted recklessly and in deliberate disregard of a high probably that emotional distress would follow.

195.    As a result of Defendants Kim, Roos Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store, Unidentified Officers 1, 2, and 3, and Defendant Lieutenant

Jamon's tortious actions, Nathaniel suffered damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

## COUNT XIII
### Intentional and/or Negligent Interference with Prospective Economic Advantage

(*Defendants Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and Unidentified Employees of J and H Beverage, Inc. d/b/a/ Largo Liquors and Defendant Lieutenant Jamon*)

196.     Nathaniel incorporates the allegations made in Paragraphs 1-195 of this Complaint as if fully stated herein.

197.     Nathaniel asserts this claim against Defendants Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store and Defendant Lieutenant Jamon, in both their official and personal capacities (henceforth referred to in Count XIII of the Complaint as the "Defendants").

198.     On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. *See id.* In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

199.     As a result of emotional and physical injuries arising from the Incident, Nathaniel was forced take a leave of absence and was later terminated from his position at TSA.

200.     Prior to being terminated, Nathaniel had an economic relationship with TSA as an employee earning a salary.

201.     Because Nathaniel was a customer of the Liquor Store and able to use of currency to make a purchase, the Defendants knew or should have known that Nathaniel was employed and held an economic relationship, namely employment.

202.     The Defendants' actions in brutally attacking him, seizing his person, detaining him and effectuating an arrest on his person by handcuffing him were wrongful.

203.     The Defendants either intended to disrupt the economic relationship between Nathaniel and TSA, or negligently did so.

204.     The Defendants either knew or should have known that their actions would lead to the disruption of that economic relationship.

205.     As a result of the Defendants' tortious actions, Nathaniel suffered damages, including emotional trauma, distress, damage to his reputation and the loss of his employment.

### COUNT XIV
### Negligence

*(All Defendants)*

206.     Nathaniel incorporates the allegations made in Paragraphs 1-205 of this Complaint as if fully stated herein.

207.     Nathaniel asserts this claim against all Defendants, including Unidentified Officers 1, 2 and 3, in both their official and personal capacities.

208.     On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as

a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. *See id.* In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

209. Subsequent to the attack, the person believed to be Defendant Kim ridiculed, taunted, harassed and demeaned a then fully subdued and handcuffed Nathaniel. *See id.*

210. None of the actions taken by Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store were reasonable under the circumstances and were not taken with the caution, attention or skill a reasonable person would use under similar circumstances. *See id.*

211. The Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store had a lawful duty to Nathaniel to refrain from committing an assault and/or battery against his person.

212. Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store actions resulted in a breach of the aforementioned duty. *See id.*

213. In insisting that the PGPD Officers at the scene charge Nathaniel with a crime, and in charging Nathaniel, as instructed by Defendant Lieutenant Jamon, particularly where the security footage had been reviewed, the PGPD Officers and Defendant Lieutenant Jamon were

negligent and did not act with the caution, attention or skill a reasonable person would use under similar circumstances.

214.     Defendant Lieutenant Jamon had a duty to Nathaniel to operate within the scope of his authority and on the basis of probable cause.

215.     Defendant Lieutenant Jamon's actions resulted in a breach of the aforementioned duties.

216.     Where there is no probable cause, malice can be inferred. A police officer is liable where the officer acts with malice. *See* MPJI-Cv 15:11.

217.     The tortious actions of Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store, Unidentified Officers 1, 2, and 3, and Defendant Lieutenant Jamon's caused Nathaniel to suffer damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

## COUNT XV
### Gross Negligence

*(Defendants Jay Chang Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and Unidentified Employees of J and H Beverage, Inc. d/b/a/ Largo Liquors)*

218.     Nathaniel incorporates the allegations made in Paragraphs 1-217 of this Complaint as if fully stated herein.

219.     Nathaniel asserts this claim against Defendant Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Roos, Han, Garcia, A. Kim and Unidentified Employees of the Liquor Store, in both their official and personal capacities.

220.     On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of

an elderly customer by the Store Clerk. *See id.* In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

221. Prior to the attack, the Store Clerk, threatened to harm Nathaniel's person and aggressively taunted him to "throw the first punch." *See id.*

222. Subsequent to the attack, the person believed to be Defendant Kim ridiculed, taunted, harassed and demeaned a then fully subdued and handcuffed Nathaniel. *See id.*

223. The actions taken by Defendants Kim, Roos, Han, Garcia, A. Kim and/or Unidentified Employees of the Liquor Store were enacted with a thoughtless disregard of the consequences to Nathaniel's life and/or property and no action was taken by said Defendants to avoid those consequences.

224. The Defendants Jay Chang Kim, Wallace Kent Roos, Jr., Seung Bong Han, Vanancio Gomez Garcia, Adam C. Kim and/or Unidentified Employees of J and H Beverage, Inc. d/b/a Largo Liquors had a lawful duty to Nathaniel to refrain from committing an assault and/or battery against his person.

225. Defendants Jay Chang Kim, Wallace Kent Roos, Jr., Seung Bong Han, Vanancio Gomez Garcia, Adam C. Kim and/or Unidentified Employees of J and H Beverage, Inc. d/b/a Largo Liquors actions resulted in a breach of the aforementioned duty.

226. The tortious actions of Defendants Jay Chang Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and Unidentified Employees of J and H Beverage, Inc. d/b/a/ Largo Liquors caused Nathaniel to suffer damages, including physical injury, emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

## COUNT XVI
### Invasion of Privacy/False Light

*(Defendants Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and Unidentified Employees of J and H Beverage, Inc. d/b/a/ Largo Liquors)*

227. Nathaniel incorporates the allegations made in Paragraphs 1-226 of this Complaint as if fully stated herein.

228. Nathaniel asserts this claim against Defendant's Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Roos, Han, Garcia, A. Kim and Unidentified Employees of the Liquor Store, in both their official and personal capacities.

229. On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. *See id.* In response, the Store Clerk threateningly and provocatively (name unknown) told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs

placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

230.    Subsequent to the attack, the person believed to be Defendant Kim ridiculed, taunted, harassed and demeaned a then fully subdued and handcuffed Nathaniel. *See id.*

231.    During the alleged "Citizens Arrest," at least twenty-six (26) different persons entered the Liquor Store and witnesses Nathaniel being restrained, handcuffed and held in the custody of the Liquor Store Employees.

232.    As such, the alleged "Citizen's Arrest" of Nathaniel was public. *See id.*

233.    It was an invasion of Nathaniel' privacy by the Liquor Store Employees because they possessed no authority to make such an arrest, nor handcuff, detain, nor hold Nathaniel in their custody and did so, publicly, placing Nathaniel in a false light and attributing to the public characteristics, conduct and/or beliefs as to him which were false.

234.    The Liquor Store Employees had actual knowledge and/or a reckless disregard of the falsity.

235.    The manner in which the Liquor Store Employees publicized the false information would be highly offensive to a reasonable person.

236.    Nathaniel did not consent to the Defendants' conduct. *See id.*

237.    The Defendants had no right to invade Nathaniel' privacy.

238.    The Defendants acted with malice in invading Nathaniel' privacy.

239.    The tortious actions of Defendants Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors Roos, Han, Garcia, A. Kim and Unidentified Employees of the Liquor Store caused Nathaniel to suffer damages, including emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

**COUNT XVII**
**Excessive Force**

*(Defendants Jay Chang Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and Unidentified Employees of J and H Beverage, Inc. d/b/a/ Largo Liquors)*

240.    Nathaniel incorporates the allegations made in Paragraphs 1-239 of this Complaint as if fully stated herein.

241.    Nathaniel asserts this claim against Defendant's Jay Chang Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Roos, Han, Garcia, A. Kim and Unidentified Employees the Liquor Store, in both their official and personal capacities.

242.    On August 7, 2017, at approximately 4:00 p.m., Nathaniel entered the Liquor Store to purchase a spirit after a long day's work at Reagan National Airport where he was employed as a Transportation Security Officer. While there, Nathaniel raised concerns about the treatment of an elderly customer by the Store Clerk. *See id.* In response, the Store Clerk threateningly and provocatively told him to "[d]o whatever you want to do, I'll give you a chance to throw the first punch." *See id.* Dissatisfied and disgruntled, Nathaniel knocked over a box of Slim Jims. *See id.* In response, three (3) of the Store's employees tackled him to the ground, banged him into a freezer, chocked him to the point of restricting his breath, threatened to kill him and handcuffed him. *See id.* The Police responded to the scene, swapped out the handcuffs placed on Nathaniel by the Private Citizens for its own handcuffs, detained him in a police vehicle, and charged him with disorderly conduct.

243.    Even if the alleged "Citizen's Arrest" of Nathaniel, had been lawful, the force used in executing that arrest was not reasonable under the circumstances as minimal or no force was necessary to detain and/or arrest Nathaniel. *See id.*

244.     The Defendants acted with malice in executing the alleged "Citizen's Arrest" and in exacting force to do so.

245.     The tortious actions of Defendants Jay Chang Kim, Han M. Kim, J and H Beverage, Inc. d/b/a Largo Liquors, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and Unidentified Employees of J and H Beverage, Inc. d/b/a/ Largo Liquors caused Nathaniel to suffer damages, including physical injury, emotional trauma, distress, damage to his personal property, damage to his reputation and the loss of his employment.

### JURY DEMAND

Nathaniel respectfully request a jury trial.

### PRAYER FOR RELIEF

Nathaniel respectfully requests the following relief:

a.     Declaratory Judgment that:

(1)     Excessive forced was used in the apprehension, detainment and/or arrest of Nathaniel by Defendants Jay Chang Kim, Wallace Kent Roos, Jr., Seung Bong Han, Vanancio Gomez Garcia, Adam C. Kim and/or Unidentified Employees of J and H Beverage, Inc. d/b/a Largo Liquors; and

(2)     The apprehension, assault, detainment and/or arrest of Nathaniel' person by Defendants Jay Chang Kim, Wallace Kent Roos, Jr., Seung Bong Han, Vanancio Gomez Garcia, Adam C. Kim and/or Unidentified Employees of J and H Beverage, Inc. d/b/a Largo Liquors did not qualify as a citizen's arrest under Maryland law.

b.     A permanent injunction that bars Defendants Jay Chang Kim, Han M. Kim, and J and H Beverage from assaulting, detaining and/or arresting a patron of Liquor Store and/or any other private citizen.

c.　Compensatory damages for the physical injuries, emotional trauma, humiliation, distress, damage to personal property that Nathaniel suffered, as well as for the loss of Nathaniel' job subsequent to the Incidents alleged in this Complaint.

(1)　These acts were carried out by owners, agents, employees, and/or contractors of J and H Beverage, Inc. d/b/a Largo Liquors, under the implicit or actual auspices of a policy and practice of the Prince George's County Police Department and Chief of Police Henry P. Stawinski, III. Thus for the tortious acts committed and for the violations of Nathaniel' Federal Constitutional rights, Nathaniel seeks damages against J and H Beverage, Inc. d/b/a Largo Liquors, and its owers, Jay Chang Kim and Han M. Kim, employees and/or contractors Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and Unidentified Employees of J and H Beverage, Inc. d/b/a Largo Liquors, Prince George's County Police Department, Officer PFC, Jamon, Chief of Police Henry P. Stawinski, III, and Unknown Officers 1, 2, and 3, in their official capacities; damages sought are joint and several, in an amount to be determined at trial.

(2)　In the alternative, for the violations of Nathaniel' Federal Constitutional rights, Nathaniel seeks damages against Jay Chang Kim, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim, Unidentified Employees of J and H Beverage, Inc. d/b/a Largo Liquors, and Defendant Lieutenant Jamon in their personal capacities; damages sought are joint and several, in an amount to be determined at trial.

(3)　For violations of Nathaniel' Maryland Constitutional and common law rights, Nathaniel seeks damages from against Jay Chang Kim, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim, Unidentified Employees of J and H Beverage, Inc. d/b/a Largo Liquors, and Defendant Lieutenant Jamon, jointly and severally liable, in an amount to be determined at trial.

d.     Punitive damages for the physical injuries, emotional trauma, humiliation, distress, damage to personal property that Nathaniel suffered, as well as for the loss of Nathaniel' job subsequent to the Incident alleged by this Complaint.

(1)     These acts were carried out by owners, agents, employees, and/or contractors of J and H Beverage, Inc. d/b/a Largo Liquors, under the implicit or actual auspices of a policy and practice of the Prince George's County Police Department and Chief of Police Henry P. Stawinski, III. Thus for the tortious acts which were committed malice and for the violations of Nathaniel' Federal Constitutional rights, also committed with malice, Nathaniel seeks damages against J and H Beverage, Inc. d/b/a Largo Liquors, and its owners, Jay Chang Kim and Han M. Kim, employees and/or contractors Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim and Unidentified Employees of J and H Beverage, Inc. d/b/a Largo Liquors, Prince George's County Police Department, Officer PFC, Jamon, Chief of Police Henry P. Stawinski, III, and Unknown Officers 1, 2, and 3, in their official capacities; damages sought are joint and several, in an amount to be determined at trial;

(2)     In the alternative, for the violations of Nathaniel' Federal Constitutional rights, which were committed with malice, Nathaniel seeks damages against Jay Chang Kim, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim, Unidentified Employees of J and H Beverage, Inc. d/b/a Largo Liquors, and Defendant Lieutenant Jamon in their personal capacities; damages sought are joint and several, in an amount to be determined at trial;

(3)     For violations of Nathaniel' Maryland Constitutional and common law rights, which were committed with malice, Nathaniel seeks damages from against Jay Chang Kim, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, Adam C. Kim, Unidentified

Employees of J and H Beverage, Inc. d/b/a Largo Liquors, and Defendant Lieutenant Jamon, jointly and severally liable, in an amount to be determined at trial; and

        (4)    For costs, expenses and attorney's fees.

    e.    In accordance with 42 U.S.C. § 1988, an award for costs, expenses and attorney's fees;

    f.    Pursuant to MD SB629, the Access to Maryland Courts Act, now in committee, an award for costs, expenses and attorney's fees;

    g.    Any other relief as this Honorable Court may deem just and deserving.


            Respectfully submitted,

            THE LAW OFFICE OF
            CHRISTINA J. BOSTICK


            Christina J. Bostick, Esq.
            CPF No.: 1012140073
            *cjbostick@BostickLawOffice.com*
            9520 Berger Road
            Suite 212
            Columba, Maryland 21046
            1 (855) 267-8425 (t)
            (443) 283-4295 (f)

            *Attorney for Plaintiff*

**VERIFICATION**

    I solemnly swear or affirm under the penalty of perjury that I have read the foregoing and that the contents thereof are true to the best of my knowledge, information, and belief.

                                   _____
                                  Nathaniel F. Davis, II

FILED

JUN 2 4 2019

CLERK OF THE CIRCUIT COURT
FOR PRINCE GEORGE'S COUNTY, MD