IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHANIEL F. DAVIS, II,                    *

     Plaintiff,                          *

     v.                                  *          Civil No.   19-3605-BAH

JAY CHANG KIM, et al.                      *

     Defendants.                         *

*    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM OPINION**

    This case arises out of a multi-count complaint (ECF 3) filed by Plaintiff Nathaniel F. Davis, II, ("Plaintiff") against 12 defendants (collectively "Defendants"), which the Court categorizes into two groups. The first group of defendants are those affiliated with Largo Liquors, including seven who are all represented by the same counsel: (1) J and H Beverage, Inc., d/b/a Largo Liquors (hereinafter "J&H Beverage, Inc."), (2) Jay Chang Kim, (3) Han M. Kim, (4) Venancio Gomez Garcia, (5) Wallace Kent Roos, Jr., (6) Adam C. Kim, and (7) Unidentified Employees of J and H Beverage, Inc. d/b/a Largo Liquors (collectively "J&H Defendants"). Seung Bong Han, who Plaintiff also alleges is a Largo Liquors employee, is proceeding pro se. The second group of defendants are those affiliated with Prince George's County Police Department (hereinafter "PGPD"), including (1) PGPD, (2) Cpl. Jarmon,[1] (3) Chief Henry P. Stawinski, III, and (4) Unknown Police Officers Nos. 1, 2, and 3. The genesis of the lawsuit is a physical

---

[1] PGPD points out that "[t]he Complaint identifies the Defendant officer as Lt. Jamon; however, the Defendant officer's actual name is Cpl. Brett Jarmon." ECF 40-1, at 2 n.1. Accordingly, the Court will refer to this defendant as Cpl. Jarmon or Defendant Jarmon.

altercation between Plaintiff and J&H Defendants that resulted in Plaintiff being handcuffed, detained, and issued a citation for disorderly conduct.  ECF 3, at 4–5.

Before the Court are three pending motions for summary judgment: PGPD's Motion for Summary Judgment (ECF 40) (hereinafter "PGPD's Motion"); J&H Defendants' Motion for Summary Judgment (ECF 41) (hereinafter "J&H Defendants' Motion"); and Plaintiff's Motion for Partial Summary Disposition and Opposition to Defendants' Respective Motions for Summary Judgment (ECF 46) (hereinafter "Plaintiff's Motion").[2]  All three motions included memoranda of law and exhibits.[3]  J&H Defendants and PGPD also jointly filed a letter asking the Court to "sanction[] Plaintiff in the form of dismissal of the entire action" primarily due to Plaintiff's failure to respond to an Order to Show Cause entered on July 13, 2022, which the Court will construe as a motion for sanctions.  ECF 57 (hereinafter "Motion for Sanctions").

The Court has reviewed the case docket and all relevant filings and any exhibits or affidavits attached thereto, including PGPD's Memorandum in Support of PGPD's Reply to Plaintiff's Response in Opposition to Its Motion for Summary Judgment (ECF 48) and J&H Defendants' Opposition to Plaintiff's Motion for Partial Summary Disposition (ECF 49), and finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  Accordingly, for the reasons stated herein, Defendants Stawinski and Jarmon will be dismissed from this case with prejudice, and Unknown Police Officers Nos. 1, 2, and 3 will be dismissed from this case without prejudice.

---

[2] Plaintiff initially failed to file dispositive motions or to respond to PGPD's and J&H Defendants' Motions in accordance with the Court's scheduling order.  *See* ECF 42.  After weighing Plaintiff's justification for missing these deadlines (the need for Plaintiff's counsel to care for an ill relative) against "troubling concerns of diligence expressed by defense counsel," the Court granted Plaintiff's belated request for an extension to file a dispositive motion and a response to the pending motions.  ECF 45.  On December 14, 2021, Plaintiff filed Plaintiff's Motion.  ECF 46.

[3] The Court references all filings by their respective ECF numbers.

Plaintiff's Motion will be denied as to Count II; PGPD's Motion and J&H Defendants' Motion will be granted as to Count II; summary judgment will also be granted as to Count II in favor of pro se defendant Seung Bong Han; and the Court declines to exercise supplemental jurisdiction over the remaining claims, which will be remanded to state court. Though troubled by Plaintiff's non-compliance with the Court's Order to Show Cause, the Court declines to dismiss any claims on that basis alone and thus denies the Motion for Sanctions.

## I.   BACKGROUND

Plaintiff originally filed this action in Maryland state court and asserted the following claims against the following defendants: violation of Maryland Declaration of Rights Article 24 against all defendants (Count I); violation of 42 U.S.C. § 1983 against all defendants (Count II); false imprisonment against all defendants (Count III); civil conspiracy against Jay Chang Kim, Cpl. Jarmon, and Unknown Police Officers Nos. 1, 2, and 3 (Count IV); misrepresentation, fraud, and deceit (with malice) against J&H Defendants, Seung Bong Han, and Cpl. Jarmon (Count VI[4]); malicious prosecution against Jay Chang Kim, Han M. Kim, J&H Beverage, Inc., Cpl. Jarmon, Unknown Officers Nos. 1, 2, and 3, and PGPD (Count VII); false imprisonment against J&H Defendants and Seung Bong Han (Count VIII); false arrest against all defendants (Count IX); battery against all defendants (Count X); assault against all defendants (Count XI); intentional infliction of emotional distress against J&H Defendants, Seung Bong Han, and Cpl. Jarmon (Count XII); intentional and/or negligent interference with prospective economic advantage against J&H Defendants, Seung Bong Han, and Cpl. Jarmon (Count XIII); negligence against all defendants (Count XIV); gross negligence against six J&H Defendants (excluding Han M. Kim) and Seung Bong Han (Count XV); invasion of privacy/false light against J&H Defendants and Seung Bong

---

[4] Plaintiff's complaint omits a "Count V." *See* ECF 3, at 28–30.

Han (Count XVI); and excessive force against six J&H Defendants (excluding Han M. Kim) and Seung Bong Han (Count XVII).  Defendants removed this action from state court on December 27, 2019, asserting that this Court possessed federal question jurisdiction over Count II, Plaintiff's federal claim under 42 U.S.C. § 1983.  ECF 2, at 2.

The Court notes that only limited discovery has been conducted in this case.  All moving parties direct the Court's attention to a 30-minute security video of the altercation.  *See* ECF 40-4; ECF 41-1, at 5; ECF 46, at 1.  However, the identities of all of the individuals in the video, even some involved in the altercation, are not clear to the Court.  Additionally, only two affidavits have been filed in relation to the parties' motions: one affirmed by Cpl. Jarmon (ECF 40-2) and offered in support of PGPD's motion, as well as a two-page affidavit affirmed by Plaintiff and submitted in response to PGPD's Motion (ECF 46-12).  Plaintiff attempts to manufacture a dispute of material fact by "disput[ing] the entirety of the statement[s] of material fact set forth in" both J&H Defendants' Motion and PGPD's Motion.  *See* ECF 46-1, at 25, 39.  Yet Plaintiff also moves for summary judgment, arguing that the material facts are indeed undisputed.  ECF 46, at 1.  The Court finds that the following are undisputed facts underlying the lone federal claim.[5]

## II.   FACTUAL BACKGROUND

The alleged incident occurred at Largo Liquors in Upper Marlboro, Maryland, on August 7, 2017, around approximately 4:00 p.m.  ECF 3 ¶ 36; ECF 13-1 ¶¶ 3, 36; ECF 16 ¶ 36; ECF 21-1 ¶ 36; ECF 40-2. ¶ 4.  Plaintiff witnessed store employees interacting with an older customer and

---

[5] These facts come from Plaintiff's complaint (ECF 3); PGPD's Answer (ECF 13-1); Defendants Venancio Gomez Garcia, J&H Beverage, Inc., Jay Chang Kim, and Han M. Kim's Answer (ECF 16); Defendants Adam C. Kim and Wallace Kent Roos, Jr.'s Answer (ECF 21-1); Affidavit of Cpl. Jarmon (ECF 40-2), Plaintiff's Response to Defendants' Interrogatories (ECF 46-7), and Plaintiff's Affidavit (ECF 46-12).  The Court has also viewed the video of the incident which was filed as physical exhibit.  *See* ECF 40-4; *see also* ECF 53 (granting motion to file physical exhibit).

disapproved of how the store employees were treating that customer.  ECF 46-7 ¶ 8; ECF 40-2 ¶ 7.  Plaintiff and the store employees then engaged in a verbal dispute.  ECF 46-7 ¶ 8; ECF 40-2 ¶ 8.  That verbal dispute escalated into a physical one after Plaintiff knocked some store property off the counter.  ECF 46-7 ¶ 8; ECF 40-2 ¶¶ 8–9.  Store employees restrained Plaintiff while Jay Chang Kim, owner of Largo Liquors, handcuffed Plaintiff, and seated Plaintiff near the front door of the store.  ECF 46-7 ¶ 8; ECF 40-2 ¶ 10.  Cpl. Jarmon, a Prince George's County police officer, was called to the scene and began gathering information about the events that had just taken place. ECF 40-2 ¶¶ 4–14.  Cpl. Jarmon replaced the store employees' handcuffs with his own handcuffs, removed Plaintiff from the store, and placed Plaintiff in the front seat of his police cruiser.  *Id.* ¶¶ 15–16.  Cpl. Jarmon returned to the store and reviewed the security footage.  *Id.* ¶ 11.  Cpl. Jarmon then issued to Plaintiff a citation for disorderly conduct and let Plaintiff go.  *Id.* ¶¶ 15–16; ECF 46-12 ¶¶ 3–5.[6]

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphasis added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will

---

[6] Plaintiff represents that the disorderly conduct charge was subsequently "dismissed," but does not support this claim with additional evidence.   ECF 46-1, at 36.

not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)).

"When faced with cross-motions for summary judgment, the Court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). "In considering each motion, [the Court must] 'resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion.'" *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392–93 (4th Cir. 2014) (quoting *Rossignol*, 316 F.3d at 523).

Generally, "summary judgment is appropriate only after 'adequate time for discovery.'" *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, if a non-moving party opposes a motion for summary judgment based on inadequate time for discovery, that party must file a Rule 56(d) affidavit. *See* Fed. R. Civ. P. 56(d); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). "The Fourth Circuit has warned that it 'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" *Est. of Grillo v. Thompson*, No. GLR-21-3132, 2022 WL 3027859,

at *3 (D. Md. Aug. 1, 2022) (quoting *Harrods Ltd.*, 302 F.3d at 244) (internal quotation marks omitted).

## IV.    ANALYSIS

PGPD and J&H Defendants filed their respective motions for summary judgment as to all claims alleged by Plaintiff.  ECF 40-1, at 8; ECF 41-1, at 4.  PGPD's Motion also raises the issue that Defendants Stawinski, Jarmon, and Unknown Officer Nos. 1, 2, and 3 should be dismissed from this suit for lack of service.  ECF 40-1, at 10–11.  The lone claim over which this Court has original jurisdiction—and the basis for removal—is Plaintiff's Section 1983 claim alleging that all defendants violated Plaintiff's civil rights while acting under color of state law.  ECF 3, at Count II; ECF 2, at 2.  Plaintiff has moved for partial summary judgment, including on the federal law claim.  ECF 46, at 2.  Despite the apparently limited discovery conducted in the case,[7] the Court will grant summary judgment to the defendants on the federal claim.  The Court will also dismiss the defendant officers from this case.

### A.  PGPD's Motion

PGPD's Motion moves for summary judgment (and dismissal)[8] on multiple theories.  *See* ECF 40-1, at 8–17.  First, PGPD asserts that it is not a proper party, which means that this Court

---

[7] Plaintiff's argument that PGPD's and J&H Defendants' Motions should be denied because of inadequate discovery (ECF 46, at 4–5) is not persuasive.  Plaintiff never invoked this Court's informal discovery dispute process.  Plaintiff never moved to compel discovery or otherwise sought the aid of the Court in obtaining discovery.  Perhaps most relevant, Plaintiff has not filed a Rule 56(d) affidavit or declaration.

[8] PGPD's first two arguments seek dismissal of the action, not summary judgment.  ECF 40-1, at 9–10.  These arguments are usually addressed earlier in litigation through a motion to dismiss.   As discussed further below, the Court will address these arguments here as PGPD has raised these arguments previously and the issues have been fully briefed.  *See* ECF 13-1, at 24; ECF 32, at 2; ECF 40-1, at 9–11; ECF 46-1, at 27–33.

lacks jurisdiction over it and must dismiss it as a party to the case.  *Id.* at 9.  Second, PGPD argues that dismissal of the complaint is warranted under Federal Rule of Civil Procedure 4(m) because Plaintiff failed to serve each of the PGPD defendant officers with a summons and a copy of the complaint.  *Id.* at 10–11.  Third, PGPD claims it is entitled to judgment as a matter of law because "the claims are barred by governmental immunity, failure to properly plead a *Monell*[9] claim, and legal justification."  *Id.* at 4.  The Court will first address the issue of service upon Defendants Jarmon, Stawinski, and the unnamed officers.  Then the Court will address PGPD's argument that it is not a proper party.  Finally, the Court will address the arguments for summary judgment regarding Count II (the § 1983 claim).  Because the Court is remanding the state law claims back to the state court, it declines to address PGPD's arguments for summary judgment on those state law claims.

        1.   Failure to Serve Defendants Stawinski, Jarmon, and Unknown Officers 1, 2, and 3

PGPD first argues that dismissal against former Chief Stawinski, Cpl. Jarmon, and several unidentified officers is required because these defendants have not been served with the complaint. ECF 40-1, at 10–11.  Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve each defendant with a properly completed summons and a copy of the complaint within 90 days after the complaint is filed.  Fed. R. Civ. P. 4(m).  Failure to comply with this service deadline requires dismissal of the action without prejudice.  *Id.*  However, if a plaintiff "shows good cause for the failure, the court must extend the time for service for an appropriate period."  *Id.*; *Hansan v. Fairfax Cnty. Sch. Bd.*, 405 F. App'x 793, 793–94 (4th Cir. 2010).  Rule 4(m) governs cases originally filed in federal court, but also applies to removed cases after the date of removal. *See* Fed. R. Civ. P. 81(c)(1).  Thus, once a matter is removed to federal court, a plaintiff has 90 days to serve process

---

[9] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

regardless of any delays in service that may have happened in state court.  *See Brower v. AT&T Mobility Servs., LLC*, No. RDB-18-2207, 2018 WL 4854168, at *3 (D. Md. Oct. 5, 2018) ("Accordingly, '[i]n removed cases, the Rule 4(m) time period starts to run upon removal to the federal district court, not the date the action was originated in state court.'") (citing 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1137 (4th ed. 2015)).  This rule is essentially mirrored in 28 U.S.C. § 1448, which states that:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.
>
> This section shall not deprive any defendant upon whom process is served after removal of his right to move to remand the case.

28 U.S.C. § 1448.  "Where the validity of service is challenged, a plaintiff bears the burden of establishing its validity."  *Quarles v. Wells Fargo Bank, N.A.*, No. GJH-20-3200, 2022 WL 952025, at *4 (D. Md. Mar. 30, 2022) (citing *Miller v. Balt. City Bd. of Sch. Comm'rs*, 833 F. Supp. 2d 513, 516 (D. Md. 2011)).

Rule 41(b) permits a court to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order."  Fed. R. Civ. P. 41(b).  Pursuant to this rule and the district courts' "inherent power" to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases," a district court can dismiss an action or a claim for lack of prosecution by the plaintiff.  *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962).  A district court "may, in appropriate circumstances, enter such a dismissal sua sponte, even absent advance notice of 'the possibility of dismissal.'"  *Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019) (quoting *Link*, 370 U.S. at 632–33).  In deciding whether to dismiss an action or a claim under Rule 41(b), a district court should "weigh: '(1) the plaintiff's degree of personal

responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal.'" *Id.* (quoting *Hillig v. Comm'r of Internal Revenue*, 916 F.2d 171, 174 (4th Cir. 1990)).  The analysis is flexible enough to accommodate the facts of each case.  *See id.* (citing *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) (Powell, J.); *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974); *Link*, 370 U.S. at 633).

In *Attkisson*, the Fourth Circuit affirmed a district court's dismissal of several defendants pursuant to Rules 4(m) and 41(b) after plaintiffs failed to obey numerous Federal Rules and court orders and did not diligently prosecute their case.  *See Attkisson*, 925 F.3d at 626–27.  After considering *Attkisson*'s guidance and applying the factors for dismissal *Attkisson* provides, the Court will dismiss the claims against Chief Stawinski and Cpl. Jarmon with prejudice pursuant to Rules 4(m) and 41(b).  The Court will also dismiss the claims against Unknown Officer Nos. 1, 2, and 3 without prejudice.

As to Chief Stawinski and Cpl. Jarmon, Plaintiff argues that these defendants were, in fact, served, and purports to provide proof that the Prince George's County Sheriff's Office was hired (and paid) to perform this service.  ECF 46-1, at 30; ECF 46-14.  As to the unnamed officers, Plaintiff admits that these officers were not served, but alleges that they are "known by PGPD" and that the failure to identify, locate, and serve them is due to the failure of PGPD to respond to discovery requests that would have identified them.  ECF 46-1, at 32 (citing ECF 46-13).[10]

---

[10] Plaintiff points to a series of unfortunately acrimonious emails between counsel to prove Plaintiff's point that discovery was not provided by Defendants in a timely manner.  ECF 46-13.  As the Court has already noted, attached emails do not take the place of a Rule 56(d) affidavit.  *See* Fed. R. Civ. P. 56(d); *Harrods Ltd.*, 302 F.3d at 244.  Regardless, the emails do not establish that PGPD failed to respond to discovery requests.  Instead, they appear to reflect a disagreement over whether Plaintiff ever propounded the discovery requests at all.

Plaintiff urges the Court to "deem service upon all the PGPD Defendants as effective despite the arguments raised in PGPD's Motion." *Id.* at 31.

The issue of service was raised by PGPD in its Motion to Extend time to File Answer (ECF 13, at 2) and again by Defendants in a joint defense status report filed on September 30, 2021. ECF 32, at 2 ("Moreover, Plaintiff failed to serve named Defendants Henry P. Stawinski, III, Police Officer Jamon [sic], or any of the unidentified police officers.").  Plaintiff responded on November 2, 2021, and claimed that "[n]o later than January 25, 2021, the Sheriff, did serve [Defendants PGPD, Stawinski, and Jarmon] at their place of employment; however, somewhere in the midst of the beginning of the Pandemic, the Affidavit of Service was not sent transmitted [sic] back to undersigned counsel, but is presently in the process of being reissued."  ECF 38, at 5.  The docket does not reflect that an affidavit was reissued.

To evaluate the arguments related to service of process, a deeper look into the procedural minutiae of this case is required.  The case was originally filed in the Circuit Court for Prince George's County on June 24, 2019.  ECF 2, at 1.  On December 27, 2019, the case was removed to this Court by "Defendant Prince George's County."  *Id.*  In the notice of removal, it clearly states that "[t]here are seven other defendants, besides the County and its employee [Cpl.] Jarmon, in the case that have not been served; however [Prince George's County has] obtained the written consent from those seven other defendants."  *Id.* (citing ECF 2-13 (Ex. 1)).  Exhibit 1 reflects the consent to removal to federal court of seven individuals or entities: J&H Beverages, Inc., Jay Chang Kim, Han. M. Kim, Wallace Kent Roos, Jr., Seung Bong Han, Venancio Gomez Garcia, and Adam C. Kim.  ECF 2-13, at 1.  There was no written consent to removal filed by Chief Stawinski or Cpl. Jarmon.

On December 27, 2019, Judge Day[11] issued a "Standing Order Concerning Removal" ordering the removing parties to "file and serve a statement" indicating, among other requirements, "[t]he date(s) on which each defendant was served with a copy of the summons and complaint." ECF 4, at 1.  On January 10, 2020, several J&H Defendants responded to Judge Day's order by noting that each was served "between December 2, 2019[,] and December 9, 2019."  ECF 10, at 1.  There was no filing by Prince George's County or from Defendants Stawinski or Jarmon.

Plaintiff makes no serious attempt to convince the Court that Defendants Stawinski and Jarmon were properly served in state court.  *See* ECF 46-1, at 29.  The notice of removal makes clear that the most recent state writs of summons for Stawinski and Jarmon were issued on December 2, 2019.  *See* ECF 2-7, at 15–16, 23–24.[12]  The case was removed to federal court by Prince George's County on December 27, 2019.  ECF 2-13.  Thus, if it happened at all, proper service of the defendant officers in state court must have occurred between December 2, 2019, and December 27, 2019.

Plaintiff concedes that a process server was not hired until Plaintiff was aware[13] that the case was being removed to federal court.  ECF 46-1, at 29 ("On or about December 20, 2019,

---

[11] This case was originally assigned to Magistrate Judge Charles Day.  Upon Judge Day's well-deserved retirement, it was reassigned to the undersigned on April 25, 2022.

[12] The record reflects that state summonses for all defendants were repeatedly re-issued at Plaintiff's request.  ECF 2-12, at 3–4 (noting that the case was filed in state court on June 24, 2019, and summonses were issued on July 16, 2019, and re-issued on September 17, 2019, October 4, 2019, and December 2, 2019).  On December 6, 2019, the Clerk of the Circuit Court for Prince George's County filed a notice that, absent a finding of good cause, the matter would be dismissed pursuant to Maryland Rule 2-507(b) if the summonses were not promptly served on the defendants. ECF 2-8, at 1.

[13] Defendants originally attempted to remove the case to this court on December 20, 2019, but received notice of a filing error from the Clerk's Office.  *See* ECF 1. Defendants later corrected that error and re-filed the case on December 27, 2019.  ECF 2.  Counsel for PGPD certified that the Notice of Removal was sent to Plaintiff via mail on December 20, 2019.  ECF 2-13, at 3.

Plaintiff hired the Prince George's County Office of the Sherriff (the 'Sherriff') to serve Defendant PGPD, Defendant Stawinski and Defendant Jarmon."). It is obvious that PGPD was served with a summons and a complaint. ECF 2 (Notice of Removal). However, there is no indication that the defendant officers were individually served prior to removal of the case to federal court. Indeed, Plaintiff notes that service was effectuated on these defendants "[n]o later than January 25, *2021*." ECF 46-1, at 29 (emphasis added). Such service, even if it did occur, would have been well outside the 90-day window had it happened after mid-March of 2020, and further beyond the outer limits of Rule 4(m) if it happened in January of 2021. Moreover, if Plaintiff was referencing service of the *state* summons and *state* complaint, such service would be improper since the matter was removed to *federal* court in late 2019. At no point did Plaintiff move for default as to the defendant officers for the failure to "plead or otherwise defend" the case. Fed. R. Civ. P. 55(a).

Plaintiff draws the Court's attention to cancelled checks from December 2, 2019, and December 4, 2019, as purported proof that "Plaintiff hired the Prince George's County Office of the Sherriff [sic] . . . to serve Defendant PGPD, Defendant Stawinski and Defendant Jarmon." *Id.*[14] One check for $40 was cashed by the Montgomery County Sheriff, purportedly to cover the cost of serving Defendant Han M. Kim. ECF 46-1, at 30 (citing ECF 46-14). The other check was for $280, was cashed by the Prince George's County Sheriff, and purportedly "accounts for the remaining seven (7) summonses served in Prince George's County which cost Forty Dollars ($40) for service of each summons." *Id.* However, excluding Han M. Kim, and similarly excluding summonses for "unknown" employees and officers, the record reflects that there were

---

[14] These checks predate December 20, 2019, the date Plaintiff alleges in his filings that Plaintiff retained the Sheriff's Office to serve Defendants PGPD, Stawinski and Jarmon. ECF 46-14, at 1–2. This difference in date has no impact on the Court's analysis because, regardless of whether (or when) the Sheriff was paid for the service, the record does not reflect that Defendants Stawinski or Jarmon were ever actually served.

still nine (9) additional summonses to be served in the case: (1) Jay Chang Kim; (2) Walter Kent

Roos, Jr.; (3) Prince Georges County Police Department; (4) J&H Beverage, Inc.; (5) Seung Bong

Han; (6) Adam C. Kim; (7) Venancio Gomez Garcia; (8) Chief Stawinski; and (9) Cpl. Jarmon.

*See* ECF 2-7, at 1–24.  Thus, the payment for the service of seven summonses—not nine—fails to

bolster Plaintiff's argument that all named defendants were timely served with a complaint and

summons.  If anything, proof of payment for the service of only seven summonses provides a

simple, logical, and tongue-twisting explanation for why there only exists proof that seven

defendants—not nine—were served: the Sheriff was only paid to serve seven state summonses and

thus only seven state summonses were served by the Sheriff.

The inquiry then shifts to whether the named defendant officers were properly served with

federal service of process within 90 days of the matter being removed to federal court.  *Brower*,

2018 WL 4854168, at *3.  The record reflects that they were not.  The federal case docket does

not show any request for the issuance of a summons for any of the defendant officers.  The docket

similarly contains no pleadings by the defendant officers.  To be sure, the docket reflects multiple

filings wherein PGPD alleges that the defendant officers have *not* been served.  *See* ECF 2, at 1;

ECF 13, at 2 ("There are two defendants that have not been served, namely Chief Stawinski and

the involved police officer.").[15]  Despite being aware of the allegation that these defendants were

---

[15]  The docket also contains a document entitled "Defendants' Joint Status Report" jointly
submitted by counsel for J&H Defendants and Shelly L. Johnson, Esq., counsel for PGPD.  *See*
ECF 32.  That document lists Ms. Johnson as "Attorney for Defendants, Prince George's County
Police Lieutenant PF Jamon [sic], Prince George's County Police Department [Chief] Henry P.
Stawinski, III, and Unknown Police Officers 1, 2, and 3[.]" ECF 32, at 3.  However, this status
report was apparently drafted, filed, and signed by counsel for J&H Defendants, not Ms. Johnson,
and thus does not constitute an admission that the named and unnamed officers were served.  Even
if it was intentionally submitted by Ms. Johnson, the Court declines to attach such significance to
an attorney's signature line and instead requires compliance with the relevant Federal Rules.
Moreover, a subsequent filing by counsel for Plaintiff notes that Ms. Johnson was "Attorney for
Defendant Prince George's County Police Department" alone, not the named and unnamed

not served, Plaintiff did not seek leave of the Court to properly serve them.  Instead, Plaintiff doubled down on the claim that each named defendant was previously served "at their respective place of employment."  ECF 46-1, at 29.

It bears noting that there has been no affidavit of service filed to substantiate the claim that service was effectuated on the named officers at their place of employment (or elsewhere). This failure occurred despite repeated promises to the Court that such affidavits would be "locate[d]," "reissued," and filed with the Court.  *Id.* ("Undersigned counsel is presently working with the Sheriff and the Circuit Court for Prince George's County to locate the Affidavits."); ECF 38, at 5 (stating that "the Affidavit of Service was not transmitted back to undersigned counsel, but is presently in the process of being reissued").  Plaintiff appears to blame this failure to provide proof of service on the Covid-19 pandemic.  *See* ECF 46-1, at 31 ("However, [t]o the extent the Sheriff is unable to timely locate proof that it served Defendants Stawinski and Jarmon as a result of COVID-19, which to date, it has thus far been unable to do despite available records that a request for such service was, in fact made . . . .") (brackets in original filing).  However, Plaintiff does not explain how the pandemic has interfered with providing proof of service over the course of what is now several years.

After numerous promises to prove service went unfulfilled, Plaintiff changed course to suggest that the named officers waived service of process pursuant to Federal Rule of Civil Procedure 4(d).  In support of this claim, Plaintiff attached signed and dated "Waiver[s] of the Service of a Summons" for both Cpl. Jarmon and Chief Stawinski. ECF 47-2, at 1–2. These documents are both signed by Plaintiff's counsel.  *Id.*  However, as PGPD notes in its Reply,

---

officers.  ECF 35, at 5.  That PGPD is raising the issue of service, as opposed to the officers themselves, is also of no moment since the Court has the authority to dismiss counts "on its own" where, as here, proper notice was provided to Plaintiff.  Fed. R. Civ. P. 4(m).

"[Counsel for Plaintiff] does not represent Stawinski, Jarmon or the unidentified police officers and cannot file any document on their behalf waiving their legal rights."  ECF 48, at 3.[16]  To the Court's knowledge, neither defendant officer has waived service.  Moreover, there would be no need for the defendant officers to waive service if, as Plaintiff's counsel originally maintained, each was properly served in the first instance.  Noting no proof to the contrary, the Court finds that the defendant officers were never served in state or federal court.

Plaintiff also argues that the named officers "are not required to be served personally [and] service is effective so long as it is left with an agent authorized by appointment or by law to receive service of process for the individual."  ECF 46-1, at 31 (citing Md. R. Civ. P. Cir. Ct. 2-124).  Though it is true that in Maryland, "[s]ervice is made upon an individual by serving the individual or an agent authorized by appointment or by law to receive service of process for the individual," Md. R. Civ. P. Cir. Ct. 2-124(b), Plaintiff makes no argument that the named defendant officers' employer is such an authorized agent.  Moreover, Plaintiff has failed to show that an agent, authorized or not, was ever served with process for the defendant officers.  Plaintiff is correct that PGPD was served.  Plus, Cpl. Jarmon was likely aware of the lawsuit since he authored an affidavit in support of PGPD's Motion for Summary Judgment.  ECF 40-2.  However, even if both defendant officers had actual notice of the pending litigation despite never having been properly served, "the rules are there to be followed, and plain requirements for the means of effecting

---

[16] Plaintiff attaches two copies of a standard AO 399 form provided by the Court to facilitate waiver of service under Federal Rule of Civil Procedure 4.  ECF 47-2, at 1.  The form is clear that it is to be signed only by an unrepresented party or counsel for that party.  *Id.*  Indeed, the form states several times that a signatory must be either the party waiving service of summons itself or an attorney making representations on behalf of the "entity [they] represent."  *Id.*  Plaintiff's counsel is undoubtedly aware of the form and the persons authorized to sign it since counsel has utilized the form in other cases before this Court.  *See Copeland v. Bd. of Educ. of Howard Cnty.,* No. 21-cv-2594-SAG (ECF 6, filed December 15, 2021); *Banks v. Martirano,* No. 20-cv-1904-CCB (ECF 5, filed August 2, 2020).

service of process may not be ignored." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

If Plaintiff had shown good cause for the failure to serve these defendants, the Court would have been required to "extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). It bears noting that Plaintiff never made a request to extend the time for service even though Plaintiff was made aware multiple times in this case that there was an issue in this regard. *See* ECF 32, at 2 (Defendants' Status Report); ECF 38, at 5 (Plaintiff's Status Report).  In fact, beyond simply being put on notice as to the issue by PGPD, Plaintiff ignored multiple efforts by the Court to address the apparent failure to prove service.

The Court scheduled a conference call to be held on the record on Wednesday, July 6, 2022, at 3:00 p.m. *See* ECF 54.[17] Counsel for the parties were informed that the sole issue to be discussed was the question of service of process on the named officers.  This call was scheduled after numerous emails were sent by the Court to all counsel of record seeking to schedule a teleconference at a mutually agreeable time.  The first of these emails was sent on June 29, 2022.[18] After counsel for the defendants replied to all recipients, including Plaintiff's counsel, that they were available on July 6, 2022, the Court notified Plaintiff's counsel by email that, absent objection, the teleconference would be set for July 6, 2022, at 3:00 p.m.  Plaintiff's counsel did

---

[17] Some of the events described in the next two paragraphs are also summarized in PGPD's and J&H Defendants' August 23, 2022, Motion for Sanctions.  ECF 57, at 1–2.

[18] All correspondence was directed to Plaintiff's counsel at the email address and telephone number included at the bottom of all court documents filed by Plaintiff and at the address on file for Plaintiff's counsel in the Court's electronic filing system.  Pursuant to the Local Rules, counsel has a continuing duty to "promptly notify the Clerk of any change of address, including email address" or risk sanctions including the possible dismissal of claims.  Loc. R. 102.1.b.ii (D. Md. 2021).  Since no changes to Plaintiff's counsel's contact information were provided to the Clerk (or directly to the Court), Plaintiff's counsel is therefore required to be reachable at the email and phone number currently on file.

not respond to that email and the teleconference was set for July 6, 2022, at 3:00 p.m.  ECF 54. The teleconference commenced as scheduled on July 6, 2022, at 3:00 p.m., but counsel for Plaintiff did not participate in the call.  The Court attempted to reach Plaintiff's counsel by phone twice while the other parties were on hold, but the Court's calls were answered by an automated greeting indicating that the voicemail associated with the number called could not accept messages.  The teleconference ended at approximately 3:15 p.m. because counsel for Plaintiff failed to appear and could not be located.  ECF 55.  Plaintiff's counsel never called or emailed chambers to informally explain why counsel missed the July 6, 2022, call.

Later that same day, the Court issued an Order to Show Cause asking Plaintiff's counsel to file a written response by July 13, 2022, explaining Plaintiff's counsel's absence from the call. ECF 56, at 2.  The Court also asked Plaintiff's counsel to provide additional information about the alleged service on the defendant officers and an explanation for improperly claiming that the named officers had waived service when they had not.  *Id.*  This Order included a warning that failure to respond may result in "dismissal of this action or additional action without further notice of the Court."  *Id.*  Despite this warning, Plaintiff's counsel again failed to respond.  It has now been over two months since the Court's Order to Show Cause and Plaintiff's counsel continues to ignore it.

Thus, recognizing that there is no proof that any defendant officers were served and applying the four factors outlined in *Attkisson*, the Court finds that dismissal with prejudice as to Chief Stawinski and Cpl. Jarmon is the proper result.  Over three years after the case was initially filed in Prince George's County Circuit Court and two and a half years after it was removed to federal court, Plaintiff has failed to demonstrate that Plaintiff served the two named officers. Plaintiff's attorney has submitted conflicting information about whether and when service on those

defendants occurred, inexplicably submitted waivers of service on behalf of those defendants despite not representing them, failed to appear for a scheduled call to address the issue, and failed to respond to a court order which warned of a possible dismissal of Plaintiff's claims due to Plaintiff's counsel's inaction. The case has progressed to this point without the named officers and, though perhaps not extreme given the lack of discovery in this case, each officer has arguably suffered prejudice in that the period for discovery has now closed. Plaintiff has repeatedly sought extensions to various filing deadlines, which reflects the ability to seek the proper relief when necessary. Yet Plaintiff has nonetheless failed to address the issue of service, or to seek an extension of the deadline to serve the defendant officers, despite knowing about the issue since the case was removed to federal court. *See* ECF 13, at 2. Given the posture of the case and Plaintiff's repeated refusal to comply with the Court's request to address the question of service, the Court finds that no sanction short of dismissal with prejudice is appropriate.

As to the unidentified police officers, Rules 4(m) and 41(b) also counsel in favor of dismissal. Unnamed defendant officers, though unknown to Plaintiff at the time the complaint was filed, must still be served within the same timeframe as named defendants. *See Attkisson*, 925 F.3d at 627–28. Plaintiff has not diligently pursued discovery to identify these officers. Plaintiff's counsel noted in a status report on November 2, 2021, that:

> On or about August 25, 2021, Defendants issued their discovery request in this matter . . . to both Defendant and PGPD and Largo Liquor. Defendants have yet to respond to any of those requests and their response is necessary in order for Plaintiff to request that the Court issue an order requiring the participating [sic] of the presently unidentified officers as parties to this matter.

ECF 38, at 6. Assuming that Plaintiff meant that *Plaintiff* had propounded discovery requests on August 25, 2021, that request still came over two years after the case was initially filed and over a year and a half after it was removed to federal court. Plaintiff has made no motion to compel discovery or to extend time for discovery in order to determine the identities of Unknown Officers

Nos. 1, 2, and 3.  Plaintiff has offered no proof that Plaintiff attempted to identify the officers through other means. Thus, because the unidentified officers have not been served and because Plaintiff "show[s] a lack of diligence in pursuit of [Plaintiff's] claims" against them, Unknown Police Officers Nos. 1, 2, and 3, are dismissed from this suit without prejudice.  *See Attkisson*, 925 F.3d at 627; *id.* at 628 (noting that, in the Fourth Circuit, dismissal of unidentified defendants "must be without prejudice").

> ### 2.  Claims Against PGPD

Having dismissed the claims against the specific officers, the Court now turns to arguments related to their employer.  First, PGPD alleges that dismissal with prejudice is required because "[t]he Complaint fails to state a claim upon which relief may be granted as to Prince George's County Police Department" as "it is not a legal entity capable of being sued."  ECF 40-1, at 9. Pursuant to Maryland law and the Prince George's County Charter, PGPD avers that any claims made against PGPD are essentially claims against Prince George's County, and therefore naming PGPD as a defendant was improper.  *Id.* (citing Md. Code. Ann., Local Gov't § 9-201 and Prince George's County Charter §§ 101 & 103 (2014)).  Plaintiff responds that PGPD should have raised this issue earlier in the case through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) or should have moved to join Prince George's County as an essential party to the action pursuant to Federal Rule of Civil Procedure 19.  ECF 46-1, at 27–28.

This is not the first time this issue has been raised in this case.  In answering the complaint, PGPD noted as a "defense" that it "is not the proper party."  ECF 13-1, at 24.  Later, PGPD noted in a status report filed on September 30, 2021, that Plaintiff had sued PGPD, "which is not a legal entity capable of being sued."  ECF 32, at 2.  On November 2, 2021, Plaintiff filed a status report raising the same argument.  ECF 38, at 3–5.  At no point did Plaintiff seek to amend the complaint

to address the issue just as PGPD never moved to dismiss the claims against it on the ground that it was improperly sued.

"Under Maryland law, it is well-established that county police departments are agents of the county and not treated as separate legal entities." *LaPier v. Prince George's Cnty.*, No. 10–CV–2851 AW, 2011 WL 4501372, at *3 (D. Md. Sept. 27, 2011) (collecting cases). "Pursuant to state law, the Prince George's County Charter mandates that the corporate name of the County is 'Prince George's County, Maryland,' and that the County shall be designated as such in all actions and proceedings touching its liabilities and duties." *Hamilton v. Prince George's Cnty. Police Dep't*, No. DKC 17-2300, 2018 WL 1365847, at *2 (D. Md. Mar. 16, 2018) (citing Prince George's County Charter § 103). As such, any claim against PGPD should have been raised as a claim against Prince George's County itself. *Id.* (citing *Hines v. French*, 157 Md. App. 536, 573 (2004)). Moreover, it is common for courts to dismiss entities like PGPD if their host county is already a defendant. *See Taylor v. Leggett*, No. PX 16-115, 2017 WL 1001281, at *2 (D. Md. Mar. 15, 2017) ("Accordingly, and *because Montgomery County is named as a separate defendant in this case*, the Court will dismiss Taylor's claims against the Police Department and the Montgomery County Correctional Facility with prejudice." (emphasis added)).

However, though Prince George's County was not named as a defendant in the instant action, and despite some advance warning that the issue might be raised, the Court finds that it would "elevate needlessly form over substance to dismiss completely a claim because Plaintiff named the specific county entit[y] that allegedly harmed him as opposed to the county itself." *Sanders v. Callender*, No. DKC 17-1721, 2018 WL 337756, at *6 (D. Md. Jan. 9, 2018) (citing *Abunaw v. Prince George's Corr. Dep't*, No. DKC 13-2746, 2014 WL 3697967, at *2 (D. Md. July 23, 2014)). Of course, most cases permitting the substitution of a county for an incorrectly-

sued department involve pro se plaintiffs.  *Sanders*, 2018 WL 337756, at *6 ("[W]hen, as here, the county has notice that it is being sued, is not otherwise named, and plaintiffs are proceeding pro se, the county will not be dismissed merely because plaintiffs identified the wrong entity.").  Regardless, the Court finds that the argument that Prince George's County is not properly a defendant is judicially estopped.  *Id.*

The doctrine of judicial estoppel holds that if "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895).  Here, like in *Sanders*, it was Prince George's County, not its police department, who removed this case to federal court.  *See* ECF 2, at 1 ("Defendant Prince George's County, Maryland, by its undersigned counsel and the Prince George's County Office of Law . . .  hereby gives notice of its removal of the above-referenced case . . . .").  Following removal, all parties proceeded as if the action had been properly removed and PGPD filed an answer.  ECF 13.  "Having successfully removed the action, Prince George's County cannot claim it is not a party simply to get the case dismissed on a technicality." *Sanders*, 2018 WL 337756, at *7.  Thus, the claims against PGPD will be construed as claims against Prince George's County, Maryland, and dismissal on the ground that the wrong entity was sued will be denied.

### 3.  Section 1983 Claim Against PGPD/Prince George's County

This does not, however, end the Court's inquiry into whether the claims against Prince George's County will survive summary judgment.  For a local government entity to be liable under 42 U.S.C. § 1983, the entity's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v.*

*Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).  Injuries "inflicted solely by [an

entity's] employees or agents" cannot serve as the basis for a § 1983 claim.  *Id.*  The *Monell* Court

held that a municipal government entity cannot be liable under § 1983 based on a theory of

vicarious liability, including respondeat superior.  *See Los Angeles Cnty. v. Humphries*, 562 U.S.

29, 35–36 (2010) (citing *Monell*, 436 U.S. at 692–94).  Rather, the entity's official policy, custom,

practice, or usage must have directly caused the alleged violation of federal constitutional rights.

*Id.* at 32–33.

Plaintiff's complaint does not allege that any official policy, custom, practice, or usage

contributed to the alleged constitutional violation Plaintiff suffered, and Plaintiff does not argue as

much elsewhere.  *See* ECF 3 ¶¶ 79–85.  Plaintiff's sole argument appears to be that Plaintiff was

not required to plead a *Monell* claim because Prince George's County is not a municipality.  ECF

46-1, at 34.  This argument is entirely without merit.  The *Monell* Court itself understood its

holding to apply to "municipalities *and other local government units*," including counties.  *Monell*,

436 U.S. at 690 (emphasis added); *see also id.* at 667 (referring to suits against a "county, city, or

parish" in analyzing the legislative history of § 1983).[19]

Thus, even if Prince George's County Police Officers did commit constitutional torts

against Plaintiff with their actions on August 7, 2017, Prince George's County is entitled to

judgment as a matter of law on this Count since Plaintiff has not alleged nor argued a cognizable

---

[19] In raising this argument, Plaintiff ignores the multitude of cases reflecting *Monell* claims
maintained against Maryland counties including Prince George's County, some of which are cited
in Plaintiff's own filing.  *See* ECF 46-1, at 35 (citing *Randall v. Prince George's Cnty.*, 302 F.3d
188, 193 n.4 (4th Cir. 2002) ("A *Monell* claim asserts § 1983 liability against a municipal *or county
government.*") (emphasis added)); ECF 46-1, at 24 (citing *Wilson v. Prince George's Cnty.*, 893
F.3d 213, 216 (4th Cir. 2018) ("Wilson filed suit under 42 U.S.C. § 1983 against Officer Gill *and
Prince George's County* . . . .") (emphasis added)).

*Monell* claim.  Because PGPD has shown that there is no genuine dispute as to any material fact

and it is entitled to judgment as a matter of law, summary judgment will be granted in favor of this

defendant on Count II.  Fed. R. Civ. P. 56(a).[20]

### B.  J&H Defendants' Motion

J&H Defendants moved for summary judgment on all claims, including the § 1983 claim.

ECF 41-1.  For the reasons explained below, the Court will grant summary judgment to J&H

Defendants on Count II, the § 1983 claim.

Section 1983 allows plaintiffs to bring a claim for "deprivations of rights secured by the

Constitution and laws of the United States when that deprivation takes place 'under color of any

[state law].'"  *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. §

1983).  A private citizen can only be liable under § 1983 if that private citizen was acting as a state

actor.  *Gregg v. Ham*, 678 F.3d 333, 339 (4th Cir. 2012).  A private citizen is a state actor for §

---

[20] The Court notes that even if it did not dismiss Defendants Stawinski, Jarmon, and the
unidentified officers above, it would grant summary judgment to these defendants in their official
capacities regarding Count II.  The Supreme Court has held that "an official-capacity [§ 1983] suit
is, in all respects other than name, to be treated as a suit against the entity" because "the real party
in interest is the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (unanimous opinion)
(citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)).  When a plaintiff sues an agent of a local
government entity in his official capacity under § 1983 as well as the entity itself, the official-
capacity claim "should be dismissed as duplicative."  *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th
Cir. 2004); *see also, e.g.*, *White v. City of Hagerstown*, No. JKB-18-3232, 2020 WL 3034852, at
*6 (D. Md. June 5, 2020) (dismissing a § 1983 official-capacity claim as "duplicative" against a
police officer where the plaintiff also alleged a *Monell* claim against the city); *Grim v. Balt. Police
Dep't*, No. ELH-18-3864, 2019 WL 5865561, at *16 (D. Md. Nov. 8, 2019) (dismissing a § 1983
official-capacity claim as "redundant" against a police officer where the plaintiff also alleged a
*Monell* claim against the police department); *Cottman v. Balt. Police Dep't*, No. 21-cv-00837-
SAG, 2022 WL 137735, at *6 (D. Md. Jan. 13, 2022) (dismissing as duplicative all *Monell* official-
capacity claims against individual officers as "duplicative" when the complaint also brought
*Monell* claims against the police department).  Accordingly, had these defendants not been
dismissed from this action, summary judgment would be granted on Count II as to Defendants
Jarmon, Stawinski, and Unknown Police Officers Nos. 1, 2, and 3 in their official capacities.
Because Chief Stawinski was only sued in his official capacity, Count II would therefore be
dismissed against him entirely.

1983 purposes if that citizen either "acted together with" or "obtained significant aid from state officials." *Lugar*, 457 U.S. at 937.  If a private citizen is performing a public function—i.e., one "that is 'traditionally the exclusive prerogative of the State'"—then the private citizen may be considered a state actor under § 1983.  *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 354 (4th Cir. 2003) (quoting *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 342 (4th Cir. 2000)).  In a context more relevant here, the Fourth Circuit has held that a private citizen executing a citizen's arrest must have, at minimum, been granted "plenary arrest authority" by the State in order to be considered a state actor.  *United States v. Day*, 591 F.3d 679, 689 (4th Cir. 2010) (finding that, under the public function test, private armed security officers who effected an arrest were not state actors).

Plaintiff has not argued that any of the Largo Liquors employees were state actors on August 7, 2017.[21]  Rather, Plaintiff maintains that the Largo Liquors employees executed a citizens' arrest albeit, in Plaintiff's view, an unlawful one.  *See, e.g.*, ECF 3 ¶¶ 1–4 (repeatedly referring to the incident that sparked this lawsuit as an "alleged 'Citizen's Arrest'"); ECF 46-1, at 13, 21, 17 (same).  In support of Plaintiff's argument for summary judgment on the § 1983 claim against J&H Defendants and pro se Defendant Seung Bong Han, Plaintiff cites only one out-of-district case that does not involve the actions of private citizens at all.  ECF 46-1, at 21 (citing *Smith v. Town of S. Hill*, No. 3:19CV46, 2020 WL 1324216, at *10 (E.D. Va. Mar. 20, 2020)).  To the extent Plaintiff alleged that Cpl. Jarmon had a prior relationship with Largo Liquors and J&H

---

[21] Plaintiff claims that one Largo Liquors employee received "credentials as [a] special police officer" on August 20, 2017.  ECF 46-1, at 11.  Such credentials likely are not sufficient to transform a private citizen into a state actor.  *See Day*, 591 F.3d at 689 (citing *Romanski v. Detroit Entm't, LLC*, 428 F.3d 629, 637 (6th Cir. 2005)).  The Court need not engage in that debate, however, because there is no claim that any of the private citizen defendants possessed "special police" credentials on August 7, 2017, the date of the alleged incident.

Defendants that might somehow impact the Court's "state actor" analysis, Cpl. Jarmon maintains

that he has no prior relationship to Largo Liquors in any capacity.  *See* ECF 40-2 ¶ 17 ("I have not

worked part-time or full time as security or in any other capacity for Largo Liquor Store."); *id.* ¶

19 ("Prior to August 7, 2017, I never met Jay Kim, owner of Largo Liquor store.").  Plaintiff has

proffered no evidence to the contrary.  As such, because there is no dispute that the employees of

Largo Liquors, including J&H Defendants and pro se Defendant Seung Bong Han,[22] were not state

actors during their encounter with Plaintiff, the Court grants summary judgment in favor of J&H

Defendants and Seung Bong Han as to Count II of the complaint.  Because this Court is remanding

the state law claims back to the state court, it declines to address J&H Defendants' arguments for

summary judgment on those state law claims.

### C. The Court Declines to Address the Remaining Arguments in J&H Defendants' Remaining State Law Arguments, PGPD's/Prince George's County's Remaining State Law Arguments, and Plaintiff's Motion for Partial Summary Disposition.

Remaining are PGPD's (ECF 40) and J&H Defendants' Motions for Summary Judgment

(ECF 41) regarding the remaining state law claims (Counts I, III, IV, VI, VII, VIII, IX, X, XI, XII,

XIII, XIV, XV, XVI, XVII), as well as Plaintiff's Motion for Partial Summary Disposition (ECF

46).  These remaining claims are based in state law and are before the Court pursuant to the Court's

"supplemental jurisdiction."  *See* 28 U.S.C. § 1367(a).  Federal courts "may decline" to exercise

supplemental jurisdiction in certain circumstances including if "the district court has dismissed all

claims over which it has original jurisdiction."  28 U.S.C. §1367(c)(3); *Hinson v. Norwest Fin.*

*S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (remanding where "[t]he federal claim . . . had been

disposed of . . . and State claims predominated"); *Banks v. Martirano*, No. 20-cv-1904-CCB, 2020

---

[22] Pro se Defendant Seung Bong Han did not join the represented J&H Defendants' Motion. Nevertheless, this analysis applies in equal measures to the pro se defendant.  The Court will therefore grant summary judgment on the § 1983 claim to Defendant Seung Bong Han if Plaintiff does not oppose this action within seven days of the entry of this order.  *See* Fed. R. Civ. P. 56(f).

WL 5849477, at *3 (D. Md. Oct. 1, 2020) (citing 28 U.S.C. § 1367(c)); *Farlow v. Wachovia Bank of N.C., N.A.*, 259 F.3d 309, 316 (4th Cir. 2001)). The Fourth Circuit "has emphasized that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In determining whether to retain supplemental jurisdiction over state law claims, this Court must consider "the convenience and fairness to the parties, existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110. After considering these factors, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims.

The veritable smorgasbord of remaining claims presents no issues of federal policy and generates precisely the types of state law questions that federal courts are cautioned to avoid. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surefooted reading of applicable law. . . . [I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). The Court sees no reason why it would be more convenient for the remaining parties to continue to litigate in federal court in Baltimore or why such an outcome is needed to ensure fairness. With dismissal or summary judgment being granted on all federal claims, "state issues substantially predominate . . . in terms of proof, . . . the scope of the issues raised, [and in] the comprehensiveness of the remedy sought." *Id.* at 726–27.[23]   As such, the Court declines to exercise supplement jurisdiction over the

---

[23] The Court recognizes that Plaintiff's first count, the state constitutional claim arising under Article 24 of the Maryland Constitution, could arguably be resolved under federal law since Article 24 is "*in pari materia* with the Due Process Clause of the Fourteenth Amendment." *See Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 628 (2002). However, "simply because a Maryland constitutional provision is *in pari materia* with a federal one or has a federal counterpart, does *not*

remaining state claims, remands them to state court, and leaves their "resolution to state tribunals." *Id.* at 727.[24]

### D.   PGPD's/Prince George's County's and J&H Defendants' Motion for Sanctions

On August 23, 2022, PGPD and J&H Defendants jointly filed supplemental correspondence asking the Court to "sanction[] Plaintiff in the form of dismissal of the entire action" as a consequence for Plaintiff's failures to communicate with the Court, Plaintiff's misrepresentation as to waiver of service described earlier in this Memorandum Opinion, and Plaintiff's failure to respond to the Court's Order to Show Cause found at ECF 56.   ECF 57, at 1–2.   Plaintiff did not respond.

The Court has nothing before it justifying Plaintiff's decision to represent that two defendants waived service of process when they clearly did not.   Plaintiff similarly offers no excuse for Plaintiff's failure to respond to an unambiguous Order to Show Cause.   Even PGPD's and J&H Defendants' Motion for Sanctions—filed on the docket and sent to all parties via ECF—somehow failed to generate any response from Plaintiff.   PGPD and J&H Defendants are correct that Plaintiff's actions did not go unnoticed as Plaintiff's failure to respond to the Order to Show Cause has been incorporated into the Rules 4(m) and 41(b) analysis completed above.   Accordingly, the Court finds this to be a sufficient "sanction" as it pertains to this case and declines to dismiss any

---

mean that the provision will *always* be interpreted or applied in the same manner as its federal counterpart."   *Id.* (emphasis in original).   Even if federal law may be implicated in deciding the Article 24 claim, reasons of comity weigh in favor of allowing a state court to make that choice.

[24] Ordinarily, a federal district court would decline to exercise its supplemental jurisdiction over state law claims when federal claims are dismissed "in the *early stages* of litigation."   *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018) (emphasis added).   The Court recognizes that this action was removed in late 2019 and thus does not appear, at least at first blush, to be in its "early stages."   However, due to scheduling delays attributable to the Covid-19 pandemic, the relatively slow pace of discovery, and Plaintiff's refusal to respond to the Court's queries, this case is actually closer to its beginning than its end, and remand of the remaining claims is appropriate.

remaining claims as a remedy for Plaintiff's litigation-related actions.  However, the Court cautions Plaintiff that a state court judge might view similar issues differently and Plaintiff is advised to scrupulously observe any orders issued in state court following remand.

## V.    CONCLUSION

For the reasons stated above, PGPD's motion for summary judgment (ECF 40) is GRANTED IN PART as to Count II and DENIED IN PART as to remaining counts because these counts are REMANDED to state court; J&H Defendants' motion for summary judgment (ECF 41) is GRANTED IN PART as to Count II and DENIED IN PART as to remaining counts because these counts are REMANDED to state court; and Plaintiff's motion for partial summary disposition (ECF 46) is DENIED as to Count II and as to remaining counts because these remaining counts are REMANDED to state court.  The Court GRANTS summary judgment on Count II in favor of Defendant Seung Bong Han absent any opposition by Plaintiff, which must be filed within seven days of the filing of this Memorandum Opinion and Order, and REMANDS all remaining counts against Seung Bong Han to state court.  Defendants Stawinski and Jarmon are DISMISSED WITH PREJUDICE and Unknown Police Officer Nos. 1, 2, and 3 are DISMISSED WITHOUT PREJUDICE.  The remaining state law claims in Plaintiff's complaint (ECF 3) are REMANDED to state court pursuant to 28 U.S.C. § 1447(c).  The joint Motion for Sanctions (ECF 57) is DENIED.  A separate Order will ISSUE.


Dated: September 16, 2022                         _____/s/_____
                                                  Brendan A. Hurson
                                                  United States Magistrate Judge